**In re CORRUGATED CONTAINER ANTITRUST LITIGATION.**

**M.D.L. No. 310 (All Cases).**

United States District Court, S. D. Texas, Houston Division.

May 30, 1979.

Stephen D. Susman, Chairman of Plaintiff's Steering Committee, Mandell & Wright, Houston, Tex.

John D. Roady, Chairman of the Settling Defendants, Hutcheson & Grundy, Houston, Tex.

Merrick C. Walton, Chairman of the Non-Settling Defendants, Andrews, Kurth, Campbell & Jones, Houston, Tex.

MEMORANDUM OPINION:

SINGLETON, Chief Judge.

On May 16, 1979, a pretrial hearing was held before this court on the motions of Westvaco, Packaging Corporation of America, Georgia-Pacific, and Crown Zellerbach for leave to amend their answers to assert cross-claims for contribution against certain other defendants who have entered into settlement agreements with plaintiffs' class. The question presented by these motions is whether, in an antitrust action such as this, contribution among defendants is proper. This question has been very thoroughly briefed and argued. It is the conclusion of the court, after careful consideration of all the arguments presented, that such a claim would not be proper in this case.

The threshold question is whether contribution should be allowed in any antitrust

case brought under the federal laws. The Eighth Circuit, in the recent case of *Professional Beauty Supply, Inc. v. National Beauty Supply, Inc.*, 594 F.2d 1179 (8th Cir. 1979), has allowed contribution in an antitrust action; no other circuit has done so. In fact, the law has appeared uniformly contrary to the position advanced by Westvaco. *Goldlawr, Inc. v. Shubert*, 276 F.2d 614, 616 (3d Cir. 1960); *Olson Farms, Inc. v. Safeway Stores, Inc.*, 1977–2 Trade Cas. § 61,698 (D.Utah 1977); *El Camino Glass v. Sunglo Glass Co.*, 1977–1 Trade Cas. § 61,-533 (N.D.Calif.1976); *Sabre Shipping Corp. v. American President Lines, Ltd.*, 298 F.Supp. 1339 (S.D.N.Y.1969). In recent years, however, it is argued that a trend towards allowing contribution can be discerned. Two cases are currently on appeal before the Fifth Circuit which may clarify this point, *Abraham Construction Corp. v. Texas Industries, Inc.*, No. 78–1788, 604 F.2d 897, and *Iowa Beef Processors, Inc. v. Spencer Foods, Inc.*, No. 78–3346; and it has been suggested that this court defer ruling on this question until it has the benefit of that clarification.

It is the court's conclusion, however, that contribution would be inappropriate in these cases even should it be proper in some federal antitrust cases, and for that reason the court will not delay its ruling.

It appears that Westvaco seeks contribution primarily to avoid the coercive impact to it, as a late-settling or non-settling defendant, of the possibility of enormous damages being assessed against it. That this possibility is inherently coercive is indisputable—the estimates of total damages in these cases range from just under two hundred million dollars to over one billion dollars, and of course any jury verdict would be subject to the trebling provisions of the Act. Twenty-three defendants, representing approximately 80% of the market, have entered into settlement agreements for a total sum of almost three hundred million dollars. Even a defendant relatively certain of a judgment in his favor must have serious doubts about risking such exposure by going to trial. Movants here seek a means to insure that they will not be ultimately liable for more than their market share, or perhaps than their percentage of culpability, in the event they go to trial and lose.

On the other hand, the settling defendants and class plaintiffs urge that allowing contribution in any case such as this will make settlements impossible to achieve and will thereby contribute to the already notorious complexity and unmanageability of antitrust cases. Defendants have little incentive to buy peace from plaintiffs if they may be obliged to litigate the same claims against other defendants. Further complications to the efficient management of a suit such as this would arise from the processing of the many possible cross-claims and impleader actions and from the fact that joint defense efforts, with their savings in court, staff, and attorney time, would be hindered or deterred altogether. The court has recently completed the trial of *United States of America v. International Paper, et al.* and *United States of America v. Boise Cascade, et al.*, D.C., 457 F.Supp. 571; those cases involved the prosecution of nine defendants with well-coordinated joint defense efforts. The trial lasted approximately fifteen weeks. It is difficult to judicially foresee how these cases, with the class and opt-out plaintiffs and thirty-seven defendants asserting cross-claims against each other, could be managed. Liberal use of severance would be required for trial, and that would lead to the consumption of courts' time in duplicative efforts. It seems to the court that a policy of allowing contribution would complicate litigation procedurally, frustrate settlements, and inhibit joint defense efforts to such an extent that this type of litigation would be virtually impossible to manage. Weighing the possible unfairness to a defendant such as Westvaco against the ills which would arise from contribution in such a case as this leads this court to the belief that contribution would be improper and undesirable. The court is also mindful of the arguments advanced by Judge Hanson in his dissent in *Professional Beauty Supply* that the problems attendant on such a rule would be likely to deter private plaintiffs from exercising their option to serve as private attorneys general in the antitrust area. 594 F.2d at 1189.

In addition to the management problems such a rule would present, the court finds Westvaco's arguments unpersuasive in the context of intentional torts. The court notes that even in jurisdictions which allow contribution among joint tortfeasors it is usual to restrict such recovery to negligent joint tortfeasors. The deterrent policies underlying the Sherman and Clayton Acts would appear to be best served by retaining a rule which can result in any defendant found to have engaged in such intentional wrongful acts being held liable for the full sum of injuries caused by its acts and those of its partners. It must, of course, be borne in mind at all times that a defendant who is found not be an intentional violator of the antitrust laws will not pay a penny in damages.

For these reasons, the court does not feel that contribution should be allowed in any such antitrust case as this. If, however, the rule were eventually to be otherwise in this circuit, there is a compelling reason not to grant the motions of Westvaco and the three other defendants in this case, at this time. Such a rule should not be applied retroactively where the settling litigants have relied on unvarying past precedent in reaching agreements with the plaintiffs' class and in undertaking joint defense efforts which may have worked very substantially to their detriment should those defendants who have not chosen to settle be allowed to use information gained under the guise of mutual aid to bring cross-claims now. The Supreme Court has listed three factors to consider on the retroactivity of a new rule of law: that it work a substantial change in law upon which parties may have relied; that its policy be furthered by retrospective application; and that such application not be unfair. *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–07, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). In applying these three factors to the case in hand, it is clear that a holding by this court now, or by the Fifth Circuit on the appeals before it, that contribution claims are proper under federal antitrust law would be a substantial departure from existing law. If such a rule is ultimately effectuated, the policy behind it must be one of fairness to non-settling defendants; perhaps it could be argued that that policy would be favored by retrospective application, but in this court's view fairness does not require allowing non-settling defendants to participate in joint defense efforts and use information gained there against those who have chosen to settle, in reliance on the then current state of the law. As to the third factor it seems unfair to all parties to change the rules underlying settlement in so complex a case at this stage of the litigation. Settling defendants have paid three hundred million dollars to buy their peace. Almost a year has passed since the first settlement agreement was reached. The settling defendants, under the terms of their settlements, have been cooperating with class plaintiffs in their discovery. As has been mentioned, all defendants, at this court's request, participated in joint defense work. It would be inequitable to apply such a rule retroactively to this case.

For these reasons, the motions of the several non-settling defendants to amend their answers to assert cross-claims for contribution are DENIED.