Loyal E. NELSON, William G. Stash, and John Hartell, individually, and on behalf of all others similarly situated, Plaintiffs,

v.

Vern BENNETT; Bennett Farms, Inc.; Deloitte Haskins & Sells; Gerald Niesar; Niesar, Moody, Hill, Massey & Kregstein; Laventhol & Horwath; Thomas Nevis, Nevis Industries, Inc.; R. Grant Cline; and R & M Investment Marketing, Defendants.

Robert I. ELLSWORTH and Patricia J. Ellsworth, David W. Forsgett and Roselene J. Fosgett, individually and on behalf of all others similarly situated, Plaintiffs,

v.

BANK OF AMERICA NATIONAL TRUST & SAVINGS ASSOCIATION, Michael Dobbs, Niesar Moody Hill Massey & Kregstein, Gerald Niesar, Mary Ann Feist, Kenneth B. Flating, Vern Bennett, R & M Investment Marketing and Deloitte, Haskins & Sells, Defendants.

Nos. CIV. S–83–820 RAR, CIV. S–84–0858 RAR.

United States District Court, E.D. California.

June 10, 1987.

As Modified June 19, 1987.

David L. Sanborg, Keith R. Weed, Stephen D. Coldwell, Bronson, Bronson & McKinnon, San Francisco, Cal., for Laventhol & Horwath.

J. Thomas Hannan, Ronald Lovitt, Lovitt & Hannan, San Francisco, Cal., for Nelson.

Donald H. Dye, Dye, Thomas, Luebs & Mort, Riverside, Cal., for the Ellsworths.

Michael E. Zacharia, Robert L. Shipley, James M. Meier, Weintraub, Genshlea, Hardy, Erich & Brown, Sacramento, Cal., for Niesar.

Philip B. Price, Price, Price, Brown & Halsey, Chico, Cal., for Thomas Nevis and Nevis Industries, Inc.

Philip R. Rotner, Charlene S. Shimade, Rebecca A. Lenaburg, McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., John V. Diepenbrock, David A. Riegels, Diepenbrock, Wulff, Plant & Hannegan, Sacramento, Cal., for Deliotte Haskins & Sells.

Frank R. Ubhaus, Pitto, Ubhaus & Waite, San Jose, Cal. for R & M Investment Marketing.

Robert Padway, San Francisco, Cal., for Bank of America.

Claire Greve, Sacramento, Cal., for Michael Dobbs.

## ORDER

RAMIREZ, District Judge.

On January 14, 1987, the above-entitled matters came on specially for hearing before the undersigned on a motion to effectuate settlement brought by defendants GERALD V. NIESAR, MARY ANN (FEIST) McCAMANT, and the law firm of NIESAR, MOODY, HILL, MASSEY & KREGSTEIN (the Niesar defendants). Thomas Hannan, Esq. and Ronald Lovitt, Esq., appeared for the plaintiff class in *Nelson v. Bennett* (*Nelson* plaintiffs); Donald H. Dye, Esq., appeared for the plaintiff class in *Ellsworth v. Bank of America* (*Ellsworth* plaintiffs); Michael E. Zacharia, Esq. and James M. Meier, Esq., appeared for the Niesar defendants; Robert Padway, Esq., appeared for defendant BANK OF AMERICA; Claire Greve, Esq., appeared for defendant MICHAEL DOBBS; Stephen Coldwell, Esq., appeared for defendant LAVENTHOL & HOR-WATH; Philip Rotner, Esq. and David Riegels, Esq., appeared for defendant DE-LIOTTE HASKINS & SELLS; and Philip Price, Esq., appeared for defendants THOMAS NEVIS and NEVIS INDUSTRIES, INC.[1]

After years of protracted litigation, the plaintiff classes entered into a settlement agreement with one group of defendants only. The present motion to effectuate said settlement agreement presents a single yet crucial issue: whether and under what circumstances a partial settlement[2] may operate to bar the non-settling defendants' implied rights of contribution under the federal securities laws. Since the issue presented is one of first-impression, the court opted to take the matter under submission so as to issue a published opinion on the merits.

## PROCEDURAL AND FACTUAL BACKGROUND

The two related actions presently before the court arise from a common, and failed, investment scheme to breed a form of "supercows." As alleged in the various pleadings, investors in the scheme were led to

---

**1.** No appearances were made on behalf of the following defendants: VERN BENNETT; BENNETT FARMS, INC.; R. GRANT CLINE; R & M INVESTMENT MARKETING; and KENNETH B. FLATING.

**2.** As used herein, the term "partial settlement" refers to a settlement between plaintiffs and fewer than all of the defendants in an action or related actions.

believe that the promoters would purchase numerous "genetically superior cows." These prime dairy cows were to be injected with hormones so as to induce multiple ovulation. Thereafter, the harvested eggs would be fertilized with semen from "proven bulls", and the resulting product would then be implanted into the wombs of "ordinary cows." With such superior progenitors, the resulting calves were expected to be valuable, purebred "supercows."

Over a three year period, millions of dollars were collected from investors interested in the projected tax benefits and/or the prospect of future profits from the investment scheme. Eventually, however, the scheme collapsed and the invested funds were dissipated.

Not long thereafter, the present lawsuits were filed against the alleged perpetrators of the "supercow" scheme by two separate classes of hapless investors. Plaintiffs in both actions alleged that the prospectuses issued in connection with the investment scheme were misleading and failed to disclose various material facts. Most importantly, plaintiffs alleged that the prospectuses failed to disclose that the primary purpose of the scheme was to facilitate self-dealing by the defendants. Based on these allegations, both actions predicated subject matter jurisdiction on the federal securities laws (§ 10(b) of the Securities Act of 1934, 15 U.S.C. § 78j(b), and § 17(a) of the Exchange Act of 1933, 15 U.S.C. § 77q), the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. § 1961, *et seq.*), and sundry state corporations and securities laws. Approximately twenty-two million dollars in actual damages was sought between the two actions, as well as treble damages under RICO and attorney's fees.

Although multiple defendants are named in each action, the major defendants fall into the following three categories: (1) the actual promoters of the scheme (Vern Bennett and Bennett Farms, Inc.); (2) the accounting firms (Laventhol & Horwath and Deloitte, Haskins & Sells); and, most importantly for the present motion, (3) the legal counsel (the Niesar defendants). Other minor defendants include: (1) the underwriter and broker (R & M Investment Marketing); (2) the alleged beneficiaries of related party transactions (Thomas Nevis, Nevis Industries, Inc., and R. Grant Cline); and (3) the bankers (Bank of America and Michael Dobbs). In due course, most of these defendants asserted cross-claims for contribution and/or indemnity against all other defendants.

Beginning in June of 1986, this court initiated a settlement process for the underlying actions. The settlement process consisted of a series of mandatory court-facilitated conferences, some with all parties present, some with just plaintiffs and each separate defendant or group of defendants. Included in this process, of course, were the Niesar defendants.

It soon became apparent that settlement might be a viable option with regard to the claims asserted against the Niesar defendants. Therefore, at the request of counsel, the court conducted additional settlement conferences with these respective parties. Such conferences spanned the course of several months and totalled dozens of hours. In addition, the Niesar defendants and plaintiffs engaged in extensive independent settlement negotiations.

The settlement efforts finally bore fruit in October of 1986, when a proposed settlement agreement was entered into by the Niesar defendants and both plaintiff classes. The essential terms of the settlement agreement are straightforward. In exchange for dismissals and releases from the plaintiffs, the Niesar defendants will pay plaintiffs a total sum of three million dollars. From that total sum, a $300,000 cost fund, or "war chest", will be established for plaintiffs' counsel. While the ultimate distribution of the remaining settlement funds is left for this court's determination, the settling parties contemplate that the plaintiff classes will make a pro rata division, such that each class member will receive a sum proportionate to his or her share of the total investment made.

The settlement agreement is subject to one critical condition: the entry, by this court, of an order dismissing *all* cross-claims for contribution or indemnity asserted against the Niesar defendants. Absent

such an order, the agreement, by its own terms, is rendered null and void.

On January 14, 1987, this court heard oral argument on the plaintiffs' motion for approval of the settlement on behalf of the class and the Niesar defendants' motion to effectuate settlement. By virtue of previously-issued orders, several matters pertaining to the Niesar settlement had already been adjudicated.[3] In ruling on the motions, the court first determined that the settlement was fair, adequate, and in the best interests of the plaintiff classes, and therefore granted court approval of the class-action settlement pursuant to F.R. Civ.P. 23(e). Second, the court determined that the settlement was a "good faith settlement" within the meaning of Cal.Civ. Proc. Code § 877.6.[4] Third, in light of this good faith determination, the court ordered that the cross-claims for contribution and/or indemnity with respect to the *state* law causes of action be barred as against the Niesar defendants. Fourth, and finally, the court found that there are implied rights of contribution under § 10(b) of the Securities Exchange Act of 1934 and § 17(a) of the Exchange Act of 1933, but no such implied rights of contribution under RICO.

The Niesar defendants now contend that the judicial determination of good faith settlement also operates to bar the non-settling defendants' implied rights of contribution under the *federal* securities claims. This result may be reached, so the Niesar defendants argue, either by the adoption of the state settlement bar statute or, alternatively, by the recognition of a similar settlement bar rule as a matter of federal common law. The non-settling defendants, on the other hand, contend that the policies underlying implied rights of contribution and settlement bar rules are fundamentally in conflict. Therefore, the non-settling defendants conclude, implied rights of contribution for federal securities claims may never be barred prior to judgment by virtue of a partial settlement, regardless of its good faith or fairness. In short, the settling defendants should remain liable to the non-settling defendants for their proportionate share of any eventual judgment, even if that share exceeds the settlement value.

DISCUSSION

I

By way of background, contribution is an equitable doctrine of relatively recent

---

**3.** *See* Orders of this court dated March 3, 1987 and March 30, 1987.

**4.** Enacted in 1980, Cal.Civ.Proc.Code § 877.6 is otherwise known as a settlement bar statute. In pertinent part, it provides:

(a) Any party to an action wherein it is alleged that two or more parties are joint tortfeasors shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors,....

.  .  .  .  .

(c) A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor from any further claims against the settling tortfeasor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault.

(d) The party asserting the lack of good faith shall have the burden of proof on that issue.

The California Supreme Court has set forth the following criteria for determining whether a particular settlement is made in good faith:

[T]he intent and policies underlying section 877.6 require that a number of factors be taken into account including a rough approximation of plaintiff's total recovery and the settlor's proportionate liability, the amount paid in settlement, the allocation of settlement proceeds among plaintiffs, and a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial. Other relevant considerations include the financial conditions and insurance policy limits of settling defendants, as well as the existence of collusion, fraud, or tortious conduct aimed to injure the interest of non-settling defendants. Finally, practical considerations obviously require that the evaluation be made on the basis of information available at the time of settlement.

*Tech-Bilt, Inc. v. Woodward-Clyde & Associates,* 38 Cal.3d 488, 499, 213 Cal.Rptr. 256, 698 P.2d 159 (1985) (citations omitted).

As provided in subdivision (d) of § 877.6, any party challenging the good faith of the proposed settlement bears the burden of proving that the settlement was entered into in bad faith. To do so, the challenging party must "demonstrate, if he can, that the settlement is so far 'out of the ballpark', in relation to these factors as to be inconsistent with the equitable objectives of the statute." *Id.* at 499–500, 213 Cal.Rptr. 256, 698 P.2d 159.

vintage. Under this doctrine, defendants may require other wrongdoers, including those not named by plaintiffs, to contribute proportionately to the damages assessed against them. *Heizer Corp. v. Ross,* 601 F.2d 330, 331 (7th Cir.1979). It is, therefore, a modification of the traditional common law rule that "no man can be permitted to found a cause of action on his own intentional tort." Restatement (Second) of Torts § 886(A)(3) (1977).

The trend in the law to allow rights of contribution [5] has been motivated primarily by two policy objectives: fairness to defendants and deterrence. First, and probably most importantly, contribution achieves a more fair and equal distribution of justice by spreading plaintiffs' losses proportionately among all wrongdoers. *Cooper Stevedoring Co. v. Fritz Kopke, Inc.,* 417 U.S. 106, 111, 94 S.Ct. 2174, 2177, 40 L.Ed.2d 694 (1974). Otherwise, under the traditional common law rule, plaintiffs could unilaterally force one of many wrongdoers to bear the entire loss, even though others may be equally or more to blame. As stated in *Professional Beauty Supply, Inc. v. National Beauty Supply, Inc.,* 594 F.2d 1179, 1185–86 (8th Cir.1979), "there is an obvious lack of sense and justice in a rule which permits the entire burden of restitution of a loss for which two parties are responsible to be placed upon one alone, because of the plaintiff's whim or spite, or his collusion with the other wrongdoer." Second, contribution ensures that the deterrent effect of the law will be felt by all persons contemplating liability, rather than just those persons most likely to be named as defendants by the plaintiffs. *Heizer Corp. v. Ross,* 601 F.2d 330, 332 (7th Cir.1979).

Precisely to accomplish these twin policy objectives of fairness and deterrence, defendants have been accorded implied rights of contribution under the federal securities laws. *E.g., Huddleston v. Herman & MacLean,* 640 F.2d 534 (5th Cir.1981); *aff'd in part, rev'd in part on other grounds,* 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983); *Tucker v. Arthur Andersen & Co.,* 646 F.2d 721 (2d Cir.1981); *Heizer Corp.,* 601 F.2d 330.[6]

A noted, and entirely unintended, consequence of contribution, however, is its tendency to inhibit settlement, particularly in complex, multiple defendant actions. *See Huddleston,* 640 F.2d at 558. In such actions, even if an individual defendant is willing to settle with plaintiffs, that defend-

---

**5.** In *Northwest Airlines v. Transport Workers Union,* 451 U.S. 77, 87 n. 17, 101 S.Ct. 1571, 1578 n. 17, 67 L.Ed.2d 750 (1981), the Court observed that thirty-nine states and the District of Columbia now recognize to some extent a right of contribution among tortfeasors. *See also Globus, Inc. v. Law Research Service, Inc.* (Globus II), 318 F.Supp. 955, 957 (S.D.N.Y.1970), *aff'd per curiam,* 442 F.2d 1346 (2d Cir.), *cert. denied,* 404 U.S. 941, 92 S.Ct. 286, 30 L.Ed.2d 254 (1971) ("the general drift of the law today is toward the allowance of contribution among tortfeasors").

**6.** While the Ninth Circuit has yet to consider whether implied rights of contribution exist under § 10(b) and/or § 17(a), the issue has been widely ruled upon in other forums. In each and every instance, the court has held that such rights of contribution should indeed be implied. For example, in addition to the three circuit cases cited above, *see Harrison v. Sheats,* 608 F.Supp. 502 (E.D.Cal.1985); *Smith v. Mulvaney,* [1984–1985 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,084 (S.D.Cal. June 5, 1985), *appeal docketed,* No. 86–6076 (9th Cir. June 26, 1986); *Adalman v. Baker, Watts & Co.,* 599 F.Supp. 752 (D.Md.1984), *aff'd in part, rev'd in part, on other grounds,* 807 F.2d 359 (4th Cir.1986); *Seiler v. E.F. Hutton & Co.,* 102 F.R.D. 880 (D.N.J.1984);

*In re National Student Marketing Litigation,* 517 F.Supp. 1345 (D.D.C.1981). Relying on such authority, this court has previously determined that the defendants herein have implied rights of contribution arising from the federal securities claims.

However, the court has declined to find any implied rights of indemnification. In construing § 11 of the Securities Act, which expressly provides rights of contribution, the Ninth Circuit has held that implying additional rights of indemnification would undermine the statutory purpose of "assuring diligent performance of duty and deterring negligence." *Laventhol, Krekstein, Horwath & Horwath v. Horwitch,* 637 F.2d 672, 676 (9th Cir.1980), *cert. denied,* 452 U.S. 963, 101 S.Ct. 3114, 69 L.Ed.2d 945 (1981). Federal courts which have considered rights of indemnification under other federal securities statutes, including §§ 10(b) and 17(a), have rejected them as contrary to the regulated nature of the securities field. *Tucker v. Arthur Andersen & Co.,* 646 F.2d 721, 724 (2d Cir.1981); *Stowell v. Ted S. Finkel Investment Services, Inc.,* 641 F.2d 323, 325 (5th Cir.1981); *Heizer v. Ross,* 601 F.2d 330, 331–332 (7th Cir.1979).

ant would nevertheless remain subject to liability on the cross-claims for contribution asserted by the non-settling defendants. In other words, a settling defendant does not reduce its financial exposure by entering into a partial agreement with plaintiffs and, therefore, has little incentive to do so. While financial exposure can, of course, be terminated by a full settlement between plaintiffs and all defendants, as a practical matter a single, comprehensive settlement agreement is exceedingly difficult to orchestrate in complex actions.

To counteract this inhibiting effect on settlement, several states have enacted statutes which are generically known as "settlement bar statutes."[7] Under the provisions of such statutes, a partial settlement will, in specified instances, operate so as to bar the non-settling defendants from asserting cross-claims for contribution against the settling defendant. A defendant contemplating settlement with plaintiff is thereby granted assurance that, so long as the requirements of the settlement bar statute are satisfied, it may fully "buy its peace" through such a settlement.

The California statute, Cal.Civ.Proc. Code § 877.6, is representative of a state settlement bar statute. Its primary objective, like that of similar state statutes, is to encourage settlements. *See Tech-Bilt, Inc. v. Woodward-Clyde & Associates*, 38 Cal.3d 488, 494, 213 Cal.Rptr. 256, 698 P.2d 159 (1985). In addition, however, the set-

tlement bar statute is intended to complement the equitable goals underlying rights of contribution. *Id.* For this reason, not just any settlement will bar rights of contribution, but only those determined by the court to be in "good faith". Furthermore, the non-settling defendants are entitled to set off the amount of the settlement from any judgment ultimately entered against them.

Federal statutory law, by contrast, does not provide a settlement bar rule of general application, nor do the implicated federal securities statutes so provide. The task now before this court, most simply put, is to determine whether the implied rights of contribution in these federal securities actions should, in order to encourage settlement, be subject to an implied settlement bar rule under federal common law.[8]

II

The caselaw is currently unsettled, to say the least, on the issue of whether a partial settlement may bar implied rights of contribution under the federal securities laws. Indeed, only a handful of district courts have directly considered the issue. Before turning to these cases, however, the court directs its attention to a Ninth Circuit decision which all defendants claim indirectly sheds light on the inquiry—*Laventhol, Krekstein, Horwath & Horwath v. Horwitch*, 637 F.2d 672 (9th Cir.1980), *cert.*

7. The following is a comprehensive listing of state settlement bar statutes: Alaska Stat. § .09.-16.040(2) (1983); Ark.Stat. § 34–1005 (1962); Cal.Civ.Proc.Code § 877.6 (Supp.1987); Colo. Rev.Stat. § 13–50.5–105(1)(b) (1984); Del.Code. tit. 10 § 6304(b) (1975); Ga.Code § 51–12–32(a) (Supp.1981); Hawaii Rev.Stat. § 663–15 (1976); Idaho Code § 6–806 (1979); Ill.Stat. ch. 70 § 302(d) (1983); Mass.Laws ch. 231B § 4(b) (1974); Md.Code art. 50 § 20 (1979); Nev.Rev. Stat. § 17.245(2) (1979); N.D.Cent.Code § 32–28–04(2) (1976); N.M.Stat. § 41–3–5 (Supp 1981); N.Y.Gen.Oblig.Law § 15–108(b) (1978); Ohio Rev.Code § 2307.32(F)(2) (1981); 42 Pa. Cons.Stat. § 8327 (1981); R.I.Gen.Laws § 10–6–8 (1970); S.D.Comp.Laws § 15–8–18 (1967); Tenn.Code § 29–11–105(a)(2) (1980); Utah Code § 78–27–43 (1977); Va.Code § 8.01–35.1(2) (Supp.1983); Wyo.Stat. § 1–1–113(a)(ii) (1983). *See generally* Kaplan, *From Contribution to Good Faith Settlements: Equity Where Are You?*, 4 J.Air L. & Com. 771, 781–784 (1984).

8. All parties acknowledge the authority of this court to imply a settlement bar rule, if otherwise deemed appropriate. Neither of the federal securities statutes implicated in this action expressly provide for a private cause of action. Rather, the existence of a private cause of action, as well as concomitant rights of contribution, have been implied by judicial doctrine. *See, e.g., Affiliated Ute Citizens v. United States*, 406 U.S. 128, 150–54, 92 S.Ct. 1456, 1470–72, 31 L.Ed.2d 741 (1972); *Tucker v. Arthur Andersen & Co.*, 646 F.2d 721 (2d Cir.1981). Having thus "created" the remedy in the first place, the judiciary has the continuing authority, as a matter of common law, to flesh out the precise contours of the implied private cause of action. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 737, 95 S.Ct. 1917, 1926, 44 L.Ed.2d 539 (1975).

*denied*, 452 U.S. 963, 101 S.Ct. 3114, 69 L.Ed.2d 975 (1981). Interestingly, the Niesar defendants and the non-settling defendants both rely heavily on *Laventhol* in support of their disparate conclusions.

In *Laventhol*, the Ninth Circuit addressed the effect of settlement on the express statutory rights of contribution provided under § 11 of the Securities Act of 1933, 15 U.S.C. § 77k.[9] The complaint in that action alleged that "at least $2,000,-000" had been misappropriated through a fraudulent investment scheme. While multiple defendants were named, the major players were identified as being the two promoters, the accounting firms, and the bankers. These defendants, naturally enough, filed cross-claims for contribution against one another.

A settlement was eventually reached between the plaintiff class and the two promoters, who were alleged to have been the organizing and controlling persons of the scheme. Under the terms of this agreement, the promoters paid a total of $8,000, solely on account of costs, and agreed to cooperate with the plaintiffs in the pursuit of their case against the remaining defendants. The district court thereupon dismissed the cross-claims for contribution filed by the defendant accounting firms and bankers against the promoters, concluding, *inter alia*, that the settlement extinguished the promoters' liability for contribution as a matter of law. Significantly, no party sought to confirm the settlement as being in "good faith" or otherwise fundamentally fair to the non-settling defendants.

On appeal, the Ninth Circuit reversed the dismissal of the cross-claims for contribution. Since the parties herein place great emphasis on the precise language used by the court in *Laventhol*, it is appropriate to set out at length that portion of the opinion discussing the effect of the partial settlement:

Appellees' final contention is that public policy favors settlement, and that to hold that contribution survives settlement would discourage parties from reaching settlements. We are unable to accept that argument as a general principle of securities regulation or as the deciding factor in this case.

By § 77k(f), Congress has expressed its preference between the sometimes conflicting values of settlement and contribution. A right of contribution is enunciated clearly there: the statute is silent as to the encouragement of settlements. Moreover, contribution strengthens the policy underlying the securities laws.... *If it could be said that appellees' settlement with the plaintiff class had resulted in their bearing their proper share of damages, the case might be different.* Clearly, however, the settlement did not accomplish this. In paying $8,000 on account of costs, and agreeing to co-operate with plaintiffs in their case against the remaining defendants, *appellees have not borne their fair share of what is due to the plaintiff class*, if the allegations of the complaint are to be believed. It is not enough for appellees to earn their freedom from liability by assisting the plaintiff class in recovering from these appellants for their alleged error in placing faith too blindly in [the promoters].

*Laventhol*, 637 F.2d at 675 (citations omitted; emphasis added).

From this very same passage in *Laventhol*, each side finds fodder for its respective position. The Niesar defendants focus on the following statement: "If it could be said that appellees' settlement with the plaintiff class had resulted in their bearing their proper share of damages, the case might be different." According to the Niesar defendants, the *Laventhol* court thereby intimated that a good faith settlement, as opposed to the patently unfair settlement before the court, might have extinguished all rights of contribution.

The non-settling defendants object most vehemently to any such interpretation of

---

**9.** Section 77k(a) imposes liability on five specified classes of persons for untrue statements or material omissions contained in a registration statement. Section 77k(f) expressly provides a right of contribution in such actions.

*Laventhol.* They stress that the above-quoted statement is merely hypothetical dicta. Moreover, the *Laventhol* court did not mention, even hypothetically, a "good faith" settlement, but rather a "proper share of damages" settlement. The non-settling defendants suggest that these may be two very different concepts. While the term "proper share" is never defined in the opinion, the non-settling defendants propose that "proper share" refers to a value which can only be assessed after a judgment is in fact entered.[10]

In support of their own position, the non-settling defendants focus on the *Laventhol* language which suggests that contribution rights take precedence over the sometimes competing value of the encouragement of settlement. The Niesar defendants, however, note that the court was construing *express* rights of contribution. Thus, the court placed substantial reliance upon the fact that Congress had expressed its preference for contribution, but had remained silent on the subject of settlement. The present action, in contrast, involves *implied* rights of contribution. Therefore, according to the Niesar defendants, Congressional silence cannot be inferred as a preference for contribution over settlement.

While the parties plainly make much ado over *Laventhol,* this court finds that the case is not especially helpful in resolving the present dispute. As all parties readily acknowledge, *Laventhol* is not precisely on point. Not only does it address an express contribution provision, but, more importantly, the settling defendants therein did not contend that the settlement was in good faith or by any other standard fair to the non-settling defendants. Quite simply, the settlement at issue was, on its face, grossly disproportionate to the expected value of the settling defendants' liability. Given the narrow factual circumstance before it, the *Laventhol* court need not and did not elucidate on whether a good faith or otherwise arguably fair settlement may bar rights of contribution. Indeed, the very fact that both sides capably find some support in *Laventhol's* language demonstrates its limited value for the present purposes.

Moving on to the more pertinent cases, the Niesar defendants place their primary reliance upon *First Federal Savings & Loan v. Oppenheim, Appel, Dixon & Co.,* 631 F.Supp. 1029 (S.D.N.Y.1986). In *First Federal,* the district court was squarely faced with the issue of whether a "fair and equitable" settlement bars implied rights of contribution for federal securities claims. The settling defendants argued that such a bar was appropriate either by the adoption of the New York settlement bar statute[11] or by the formulation of a uniform federal standard. Upon conducting a detailed analysis, the court decided to adopt the state settlement bar statute for application to the federal securities claims.

The court first recognized the rule-making role federal courts play in the context of implied federal securities causes of action: "Because the federal securities statutes do not prescribe any rule of contribution, a determination whether to incorporate state law as the federal rule of decision or to adopt a uniform federal rule is a matter of judicial policy requiring consideration of the state and federal interests af-

---

**10.** The observation of the non-settling defendants that "proper share" need not necessarily equate with "good faith" is well-taken. However, the suggestion that proper share, whatever it may mean, can only be determined after judgment appears nowhere in the decision and does not even comport with the facts in *Laventhol.* Despite the fact that judgment had yet to be entered in *Laventhol,* the court had no hesitation in reviewing the settlement and in finding a lack of proper share, never suggesting that such a determination need await final judgment.

**11.** The New York state settlement bar statute is quite similar to Cal.Civ.Proc. Code § 877.6. N.Y.Gen.Oblig. Law § 15–108(b) provides:

> Release of tortfeasor. A release given in good faith by the injured person to one tortfeasor as provided in subdivision (a) relieves him from liability to any other person for contribution as provided in article fourteen of the civil practice law and rules.

Unlike California, however, New York adheres to the more traditional definition of good faith as being merely the absence of collusion or other indicia of bad faith. *See Kelly v. New York Telephone Co.,* 100 A.D.2d 537, 473 N.Y.S. 2d 480, 481 (1984).

fected as well as the need, if any, for a nationally uniform body of law." *Id.* at 1034.

The court then analyzed the state interests in settlement and the federal interests in contribution and found these interests to be fully compatible, concluding that a settlement bar of some form should apply:

> Turning to the case at bar, the settled federal policy in permitting contribution in security fraud cases is to insure the deterrent effect of the securities laws. The policy underlying New York's [settlement bar statute] is to promote out of court settlement in multiple tort situations.
>
> I find these policies to be fully compatible. As long as the settlement, and concomitant release, are reasonable and not sham, the deterrent effect of the securities laws is sufficiently served. In addition, the settlement promotes New York policy at the same time.

*Id.* at 1035–36 (citations omitted) (quoting *Stratton Group, Ltd. v. Spayregen,* 466 F.Supp. 1180, 1189, n. 11 (S.D.N.Y.1979)).

Finally, in determining that the settlement bar should take the form of the state statute instead of an "ad hoc fairness approach" under federal common law, the court stressed three factors. First, it observed that application of the state statute would not thwart the federal policies of fairness and deterrence, whereas failure to so apply might be disruptive to the state policy of the promotion of settlement. Specifically, in an action with pendent state claims, application of a different contribution rule to the federal claims may deprive settling tortfeasors of any assurance that they have bought their peace, and therefore settlement may be inhibited. Second, the court could find no reason why a national rule assuring uniformity among the states would be necessary, analogizing to the practice of federal adoption of state

statutes of limitations law. Third, the court found substantial practical value in having a single rule of contribution govern all claims in a single case.

Alternatively, the Niesar defendants rely on *In re Nucorp Energy Securities Litigation,* 661 F.Supp. 1403, [1987 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 93,224 (S.D.Cal.1987), as an example of a settlement bar to contribution under a uniform federal common law standard. In *Nucorp,* as here, the district court was asked to confirm a partial settlement as being in good faith pursuant to Cal.Civ.Proc.Code § 877.6, and thereupon to dismiss all cross-claims for contribution and/or indemnity arising from both the pendent state claims and the federal securities claims.[12] Upon review the court did confirm the settlement as being in good faith and, consequently, dismissed all cross-claims arising from the pendent state claims.

As to the federal securities claims, the court applied a settlement bar rule, albeit not the state settlement bar statute provided by § 877.6. In fact, for unexplained reasons, § 877.6 was not even discussed in context with the federal claims. Rather, the court fashioned a federal common law rule which essentially arrived at the same result. Relying solely on the decision in *Laventhol, supra,* 637 F.2d 672 (9th Cir. 1980), the court held that a partial settlement will bar the non-settling defendants rights of contribution under the federal securities laws "so long as the settlement represents the settling defendant's 'fair' or 'proper' share of the damages sought." *Nucorp Energy,* 661 F.Supp. at 1408, [1987 Transfer Binder] Fed.Sec.L.Rep. at 96,060. Applying this standard to the settlement at issue, and finding it amply satisfied, the court dismissed all cross-claims for contribution arising from the federal securities claims.[13]

---

**12.** The federal securities claims in *Nucorp Energy* involved both implied and express rights of contribution.

**13.** The Niesar defendants contend that an additional example of a federal common law settlement bar rule is provided by *Smith v. Mulvaney,* [1984–1985 Transfer Binder] Fed.Sec.L.Rep.

(CCH) ¶ 92,084 (S.D.Cal. June 5, 1985), *appeal docketed,* No. 86–6076 (9th Cir. June 26, 1986). The *Smith* court, however, did not adopt any such rule. In *Smith,* the settling defendants moved for dismissal of the cross-claims for contribution only after judgment had been entered as against the non-settling defendants. While

Turning to the authority cited by the non-settling defendants, the principal case relied upon is *Harrison v. Sheats*, 608 F.Supp. 502 (E.D.Cal.1985). In Harrison, just as in *Nucorp Energy*, the settling defendants brought a motion under Cal. Civ.Proc.Code § 877.6 to confirm the partial settlement as being in good faith and to bar *all* claims for contribution, those arising under the federal securities claims as well as under the state pendent claims. The non-settling defendants therein conceded that the settlement was in good faith under § 877.6, but opposed any extinguishment of their implied rights of contribution for federal securities claims by use of a California statute.

The *Harrison* court first determined the settlement to be in good faith and, consequently, dismissed the cross-claims arising from the pendent state tort claims.[14] However, the *Harrison* court failed to apply *any* settlement bar to the cross-claims arising from the federal securities claims. The reasoning behind this decision is elusive. As to the effect of the conceded good faith settlement on the federal claims, the court simply states:

> There is no doubt, therefore, that the [non-settling] defendants, depending upon what basis their liability may be determined, may be entitled to contribution from any other person jointly found

liable with them for violation of the Federal Securities Acts. The final resolution of that question, however, must await the trial of the action.

*Harrison*, 608 F.Supp. at 507.[15]

In sum, those cases squarely faced with the issue of whether an assertedly fair partial settlement may bar implied rights of contribution for federal securities claims have utilized one of three different approaches: (1) adoption of the state settlement bar statute, (2) recognition of a uniform federal settlement bar rule, and (3) rejection of any settlement bar standard.

### III

As the above review indicates, the case-law does not forge a clear path to follow, but merely provides a variety of alternatives.[16] Therefore, this court is free to adopt the rule which seems most appropriate in light of all the implicated policy considerations. To do so, two distinct determinations need be made: (1) whether a partial settlement may under any circumstances operate to bar implied rights of contribution prior to the entry of judgment; and (2) if so, whether that bar should take the form of the state settlement bar statute or of a uniform federal rule.

the court initially expressed its "disinclination" to view the fairness of the settlement in hindsight by comparing it to the judgment entered, the court in fact proceeded to do precisely that, concluding that the settlement figure did represent a fair share of the judgment. The *Smith* decision, therefore, does not aid this court in determining whether, by virtue of a partial settlement, implied rights of contribution may be ordered barred prior to the entry of judgment, before any comparison between the settlement and the judgment can be drawn.

**14.** For reasons not important herein, the *Harrison* court held that the state securities claims were not governed by § 877.6.

**15.** While placing their primary reliance upon *Harrison*, the non-settling defendants additionally assert in a general way that "the overwhelming weight of authority" indicates that rights to contribution cannot be barred prior to the entry of judgment. Without discussing the factual background or much else, the non-settling defendants cite such cases as *Huddleston v. Herman & MacLean*, 640 F.2d 534 (5th Cir.1981)

*aff'd in part, rev'd in part on other grounds*, 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983); *Heizer Corp. v. Ross*, 601 F.2d 330 (7th Cir.1979); and *McLean v. Alexander*, 449 F.Supp. 1251 (D.Del.1978). Upon examination, it turns out that these cases fail to directly address the effect of a good faith, or an otherwise assertedly fair or reasonable, settlement on implied contribution rights under the federal securities laws. Rather, these cases merely address the issue of the existence of contribution rights under § 10(b).

**16.** A review of the academic literature provides only limited additional insight. While a plethora of articles address implied rights of contribution, surprisingly little attention is devoted to the effect of a partial settlement upon such rights. At least one scholar, however, has cogently suggested that a uniform federal settlement bar rule be recognized. Adamski, *Contribution and Settlement in Multi-party Actions under Rule 10b–5*, 66 Iowa L.Rev. 533 (1981).

### A.

The primary policies underlying implied rights of contribution, as stated earlier, are the promotion of fairness to defendants and the deterrence of wrongdoing, whereas the primary policy underlying settlement bar rules is the encouragement of settlements. In making the initial determination whether a settlement bar rule of some sort should be applied to implied rights of contribution, the court essentially must decide whether these sometimes competing policies, viewed overall, will be better accommodated by a "no-bar" or a "bar" rule.

Turning first to a "no-bar" rule, such a rule would quite clearly inhibit the policy of encouraging settlements. A defendant has nothing to gain by entering into a settlement that does not effectively terminate, or for that matter even reduce, further financial exposure. *E.g., In re Corrugated Container Antitrust Litigation,* 84 F.R.D. 40, 41 (S.D.Tex.), *aff'd per curiam,* 606 F.2d 319 (5th Cir.1979) ("Defendants have little incentive to buy peace from plaintiffs if they may be obliged to litigate the same claims against other defendants"); *Sabre Shipping Corp. v. American President Lines, Ltd.,* 298 F.Supp. 1339, 1346 (S.D.N.Y.1969) ("[N]o defendant would settle with [plaintiff] if he was to find himself back in the suit as a third party defendant"). Indeed, a defendant has everything to lose by so doing. Even in the strongest of actions, there is always the possibility of a defense verdict and, thus, a required payout of zero. At the very least, by remaining in the action a defendant can defend himself and attempt to reduce his proportionate share of liability. Since the upper-end risk is not reduced in the slightest by a partial settlement, a rational defendant may as well "roll the dice", pursuing the matter to trial and hoping for a favorable verdict.[17]

While acknowledging the inhibiting effect on settlement of a no-bar rule, the non-settling defendants herein attempt to minimize this problem by suggesting that the encouragement of settlements is not a valid federal goal. In support of this striking proposition, the non-settling defendants cite *Laventhol, Krekstein, Horwath & Horwath v. Horwitch,* 637 F.2d 672 (9th Cir.1980), *cert. denied,* 452 U.S. 963, 101 S.Ct. 3114, 69 L.Ed.2d 975 (1981). The *Laventhol* decision, discussed at length above, contains no such broad proclamation.

Indeed, the suggestion that there is no federal policy to encourage settlement truly borders on the absurd. Not only have federal courts long recognized the public policy in favor of the settlement of complex securities actions, *e.g., Stull v. Baker,* 410 F.Supp. 1326, 1332 (S.D.N.Y.1976), but the Ninth Circuit in particular has stated: "It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits which are now an ever increasing burden to so many federal courts and which frequently present serious problems of management and expense." *Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir.1976). Especially in these days of burgeoning federal litigation, the promotion of settlement is, as a practical matter, an absolute necessity. Otherwise, the already congested federal dockets would be bound in a hopeless gridlock.

Moreover, settlements, even partial settlements such as the one presently contemplated, serve valuable purposes other than judicial economy. Plaintiffs who otherwise might have to wait for many years are assured some immediate compensation; the settling defendants are able to free themselves from litigation and pursue more productive matters; and the scarce societal resources which might be consumed by increasingly expensive litigation can be put

---

17. Reviewing such considerations, the court in *In re Nucorp Energy Securities Litigation* [1987 Transfer Binder], Fed.Sec.L.Rep. (CCH) ¶ 93,224 at 96,060 (S.D.Cal. May 6, 1987) concluded that under a no bar rule partial settlement would be "impossible." "Any single defendant who refuses to settle, for whatever reason, forces all other defendants to trial. Anyone foolish enough to settle without barring contribution is courting disaster. They are allowing the total damages from which their ultimate share will be derived to be determined in a trial where they are not even represented."

to other redeeming uses. *See Maher v. Zapata Corp.*, 714 F.2d 436, 466–67 (5th Cir.1983).

In short, the federal interest in encouraging settlements is an "overriding" one, and one which would be decidedly frustrated by the application of a no-bar rule.

Turning now to a "bar" rule, the non-settling defendants maintain that the twin goals of fairness and deterrence will be just as decidedly frustrated under such a rule. In fact, the non-settling defendants present a veritable "parade of horribles" which they suggest will result from the application of a bar rule. Among other things, they contend that a bar rule will leave the non-settling defendants with unfair shares, coerce settlements of frivolous claims, and encourage collusion. In addition, the non-settling defendants contend that deterrence will diminish since potential wrongdoers will realize that, should they eventually be sued, they can always settle "cheap" and thereby purchase complete security.

The dismal scenario painted by the non-settling defendants, however, assumes that unfair or sham settlements will be countenanced under a bar rule. Such is not the type of rule generally in effect or contemplated by this court. The whole purpose of a settlement bar rule, after all, is to harmonize the equitable objectives of contribution with the encouragement of settlement. *First Federal Savings & Loan v. Oppenheim, Appel, Dixon & Co.*, 631 F.Supp. 1029, 1035–36 (S.D.N.Y.1986); *see also Tech-Bilt, Inc. v. Woodward-Clyde & Associates*, 38 Cal.3d 488, 494, 213 Cal.Rptr. 256, 698 P.2d 159 (1985). For this very reason, judicial approval of the adequacy of a settlement is necessitated prior to the imposition of a settlement bar. This requirement of judicial approval ensures that rights of contribution will not be barred by unfair, collusive, or flagrantly "cheap" settlements. Moreover, in conducting its review, the court is directed to pay special attention to safeguard the equitable policies of fairness and deterrence which underlie rights of contribution. *Id.*

Despite the requirement of judicial approval, the non-settling defendants nevertheless insist that prejudgment review of a settlement cannot ensure that contribution shares will be fairly apportioned. The non-settling defendants note, quite accurately, that due to the sheer number of variables and uncertainties, prejudgment review will involve, at best, estimation and approximation of shares. Yet the non-settling defendants fail to explain why exact mathematical precision should in all instances be required. The process of apportioning contribution shares, in general, unavoidably involves much estimation and approximation, even *after* a judgment is entered. *See Smith v. Mulvaney*, [1984–1985 Transfer Binder], Fed.Sec.L.Rep. (CCH) ¶ 92,084 (S.D.Cal. June 5, 1985), *appeal docketed*, No. 86–6076 (9th Cir. June 26, 1986). The experience in the state systems indicates that courts are capable of making similar prejudgment estimations and approximations, if not with exactitude, at least with sufficient accuracy to guarantee a balanced compromise between the policies underlying contribution and those underlying settlement.

A fair "bar" rule, thus, can accommodate both the interests of settlement and of fairness and deterrence, whereas a "no bar" rule gives exclusive weight to fairness and deterrence at the complete expense of settlement. Therefore, a settlement bar rule should be implied to these implied rights of contribution.

**B.**

Having concluded that a settlement bar rule will best advance the interests at stake, the next determination is the precise form said settlement bar rule should take. Since federal securities claims are being construed, this determination is, of course, governed by federal law. However, because the federal statutes do not prescribe a settlement bar rule, the court may, as a matter of federal common law, either adopt the prevailing state statute as the federal rule of decision or, alternatively, fashion a uniform federal rule. *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 728, 99

S.Ct. 1448, 1458, 59 L.Ed.2d 711 (1979). In choosing between these alternatives, the need for a nationally uniform body of law must be balanced against the advantages of utilizing the state statute. *Id., see also Pankow Construction Co. v. Advance Mortgage Corp.*, 618 F.2d 611, 613 (9th Cir.1980).

The only case to have engaged in an in-depth balancing of these interests with regard to settlement bar rules in federal securities claims is *First Federal Savings & Loan v. Oppenheim, Appel, Dixon & Co.*, 631 F.Supp. 1029 (S.D.N.Y.1986), which adopted the state settlement bar statute as the federal rule of decision. Concerning the need for a nationally uniform body of law, the court stated that it could "think of no compelling reason why a national rule would be necessary to effectuate the federal regulatory program." *Id.* at 1036. The court stressed the common practice of incorporating state statute of limitations periods as the rule of decision for federal securities claims [18], despite the fact that this leads to periods which vary from state to state. *Id.* at 1036 and n. 11.

With all due deference, this court can think of at least three compelling reasons why a uniform national rule would be necessary in the context of a settlement bar rule. First, a settlement bar rule affects key substantive rights of the defendants under the federal securities laws. Unlike the statute of limitations period, which is more procedural in nature, a settlement bar rule defines and limits the defendants' substantive rights of contribution. *Cf. Heizer Corp. v. Ross*, 601 F.2d 330, 334 (7th Cir. 1979) (contribution is a substantive, not procedural, right). On issues which are

central rather than tangential to the federal regulatory scheme, national uniformity is especially desirable. As the Court stated in *United States v. Kimbell Foods, Inc.*, 440 U.S. at 727, 99 S.Ct. at 1458, "It is precisely when Congress has not spoken in an area comprising issues substantially related to an established program of government operation ... [that] federal courts [are directed] to fill the interstices of federal legislation according to their own standards." For this reason, courts have generally declined to adopt state statutes as the rule of decision governing implied private federal securities causes of action, and instead have fashioned uniform federal rules. *See, Wolf v. Frank*, 477 F.2d 467, 479 (5th Cir.1973), (the availability of prejudgment interest); *Drachman v. Harvey*, 453 F.2d 722, 727 (2d Cir.1971); *rev'd on other grounds on rehearing en banc*, 453 F.2d 736 (2d Cir.1972) (the definition of a "shareholder" entitled to bring suit); *Baumel v. Rosen*, 412 F.2d 571, 575 (4th Cir. 1969), *cert. denied*, 396 U.S. 1037, 90 S.Ct. 681, 24 L.Ed.2d 681 (1970) (the proper measure of damages); *but see Alley v. Miramon*, 614 F.2d 1372, 1381 n. 18 (5th Cir. 1980) (definition of "pledgor of securities" determined by reference to state law).

Second, adoption of prevailing state settlement bar statutes would lead to widely disparate results. This disparity is caused in part by the myriad differences between state settlement bar statutes [19] but, more importantly, by the simple fact that many states have no existing settlement bar statute to adopt.[20] Thus, in many states settling defendants would be accorded *no* protection from cross-claims for contribution,

---

**18.** As a general rule, in the absence of an explicit congressional directive it is federal policy to adopt the state statute of limitations period. *Holmberg v. Armbrecht*, 327 U.S. 392, 395, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946). Therefore, in *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 210 n. 29, 96 S.Ct. 1375, 1389 n. 29, 47 L.Ed.2d 668 (1976), the Supreme Court in dictum noted that since no statute of limitations is provided in actions under § 10(b), the statute of limitations of the forum state is to be followed. *See also Semegen v. Weidner*, 780 F.2d 727, 733 (9th Cir.1985) (apply state statute of limitations period in a § 10(b) action).

**19.** *See* Kaplan, *From Contribution to Good Faith Settlement: Equity Where Are you?*, 4 J. Air L. & Com. 771 (1984) (comparing state contribution and settlement bar rules and lamenting the lack of uniformity).

**20.** To date, only twenty-two states, specifically those identified in footnote 7, have some form of settlement bar statute. Of the remaining states, several do not provide for joint and several liability and/or for rights of contribution and, therefore, a settlement bar statute could have no application under state law.

whereas in others, with differences in application, they would be so protected. Such grave inconsistencies in result, especially in an area affecting substantive federal rights, would be manifestly unfair and would thwart the overall federal regulatory scheme.

Third, and directly related to the widely disparate results, adoption of state settlement bar statutes would create numerous practical problems. Preeminent among these would be the strong incentive to engage in forum shopping. An additional by-product of adoption would be wasteful conflicts of law litigation generated to determine which state's settlement bar statute applies.[21] Since federal securities claims often arise from interstate transactions, such practical problems are likely to be acute.

The three above-described reasons in favor of a nationally uniform body of law must be balanced against the advantages of adopting the state settlement bar statute. In its review of the advantages of using the state statute, the *First Federal* court concluded that such advantages were substantial, especially when both state and federal claims are presented in the same action. Specifically, the court emphasized the practical difficulties of having different settlement bar standards applied in a single action, and in particular the difficulties in allocating damage awards and setoff amounts should a settlement bar be appropriate with regard to some, but not all, claims in an action. *First Federal*, 631 F.Supp. at 1036. In addition, the court reasoned that the application of different settlement bar standards in the same action might well be disruptive to the state policies of encouraging settlement:

> [e]ven if [the New York settlement bar statute] precludes contribution on the state causes of action, application of a different contribution rule to the federal

claims would as a practical matter leave a settling defendant open to contribution on the full amount of damages, just as if the state statute had not been applied at all.

*Id.*

Without entirely discounting the concerns articulated by the court in *First Federal*, this court observes that the drawbacks resulting from separate state and federal settlement bar standards are likely to be neither widespread nor unjustified. First, practical difficulties in application will arise not in the majority of cases, but only in those particular narrow instances where (1) both state and federal claims are asserted in a single action, (2) the state provides a settlement bar statute, *and* (3) the state statute and the federal rule vary significantly. In all other instances, the application of a federal settlement bar rule presents no practical difficulties whatsoever.

Second, the application of separate state and federal settlement bar standards will not necessarily, or even generally, be disruptive of the state policy of encouraging settlement. After all, any federal settlement bar rule would share the common goal of encouraging settlements, and thus could be expected, by and large, to complement said state policies. The only possible disruption of state policies might occur where the state statute is less stringent than the federal rule (*i.e.*, a proposed settlement would satisfy the state settlement bar statute but not the federal rule). Granted, in such an instance the proposed settlement will probably not be effectuated, since the settling defendant would still remain liable for contribution on the federal claims. However, any resultant disruption of state policies in such an instance does not warrant the dilution of an otherwise appropriate federal settlement bar rule.

---

**21.** As several commentators have noted, both of these problems have already resulted from the adoption of state statute of limitation periods to federal securities causes of action. *E.g.,* Committee on Federal Regulation of Securities, *Report on the Task Force on Statute of Limitations for Implied Actions,* 41 The Business Lawyer 645, 647 (1986) ("The uncertainty and lack of

uniformity promote forum shopping by plaintiffs and result in wholly unjustified disparities in the rights of parties litigating identical claims in different states."); Note, *Statutes of Limitation for Rule 10b–5,* 39 Wash. and Lee L.Rev. 1021, 1040 (1982) ("The confusing patchwork in the law of federal 10b–5 actions is unnecessary and wasteful").

As noted above, settlement bar rules affect substantive rights under the federal securities laws. Therefore, to promote important federal policies, the federal settlement bar rule must be sufficiently stringent to provide protection of the rights of non-settling defendants. These federal policies cannot be forced to take a backseat to conflicting state policies which take a more aggressive stance in favor of settlement.

■ Upon careful balancing of all of the above considerations, the court concludes that the need for a nationally uniform body of law far outweighs the advantages of utilizing the state statute. Thus, a uniform federal settlement bar rule, rather than the California settlement bar statute, will govern these federal securities claims.

### IV

The next, and final, step in the court's analysis is to define the contours of the uniform federal settlement bar rule and to apply said rule to the Niesar settlement.

■ In defining the contours of the uniform federal settlement bar rule, the court holds that a partial settlement will bar implied rights of contribution only when said settlement is, viewed in the totality of the circumstances, fundamentally fair and equitable. *See In re Nucorp Energy Securities Litigation*, 661 F.Supp. 1403, [1987 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 93,224 at 96,060 (S.D.Cal.1987) (partial settlement which represents a "fair or proper share of damages" will bar cross-claims for contribution). Among the factors to be considered in making such a determination are the possible uncollectibility of any larger judgment which might be entered against the settling defendants, the adequacy of the settlement amount in light

of the comparative culpability of the settling defendants and the uncertainties of establishing such liability, and the participation of a magistrate or judge in the settlement negotiations. *Id.* Court review of a partial settlement in light of such factors will yield ample protection of the non-settling defendants' interests, and yet allow the settling defendants to confidently buy their peace. Notably, these are the same types of factors which are considered under the California's settlement bar statute. *See Tech-Bilt, Inc. v. Woodward-Clyde & Associates*, 38 Cal.3d 488, 213 Cal.Rptr. 256, 698 P.2d 159 (1985).

■ Applying such factors to the Niesar settlement inescapably leads to the conclusion that this is a fundamentally fair and equitable settlement. First and foremost, the settlement is adequate in light of the possible uncollectibility of any larger judgment. At its most practical level, the Niesar settlement reflects a recognition that the only substantial recoverable asset of the Niesar defendants is their legal malpractice insurance. The Niesar defendants have submitted detailed evidence, including the opinion of legal counsel retained by class plaintiffs. Moreover, the plaintiffs, who obviously have a keen interest in pursuing the maximum coverage, are also satisfied that no greater coverage is likely to become available. In short, it is highly probable that *all* of the Niesar defendants' recoverable assets have already been put on the table for this settlement.[22]

Second, even if the insurance coverage were found to be much greater, the settlement amount is still within the reasonable range of the Niesar defendants' potential share of liability. Plaintiffs herein seek a total recovery in actual damages of some twenty-two million dollars.[23] Taking into

---

**22.** Disputes between the Niesar defendants and their insurers regarding coverage for these actions have been ongoing, with some insurers disputing the amount of coverage and others denying coverage altogether. A declaratory relief action to determine coverage is currently pending in another court. By the above comments, this court does not mean to imply that the coverage is *in fact* limited to three million dollars, as no such issues regarding coverage have been adjudicated in these actions. Rather,

for purposes of reviewing the Niesar settlement herein only, the court merely contemplates the likely *potential* coverage limits.

**23.** While plaintiffs also seek treble damages for their RICO claims, no rights of contribution are available to defendants under RICO, *e.g., Seminole Electric Cooperative, Inc. v. Tanner*, 635 F.Supp. 582, 584 (M.D.Fla.1986). Therefore, the adequacy of the Niesar settlement for purposes of barring contribution on the federal securities

account the number of non-settling defendants, the serious nature of the allegations remaining against them, as well as the fact that a settlor should pay less in settlement than if he were found liable after trial, the settlement amount of three million dollars constitutes a plausible and fair assessment of the expected liability of the Niesar defendants.

Third, this court was involved throughout in facilitating the Niesar settlement. From this vantage point, the court observed experienced counsel who aggressively · sought the best result for their clients and who were capable of making informed decisions about their relative positions. Certainly, there was no hint of collusion, fraud, or any other tortious conduct aimed to injure the interests of the non-settling defendants.

In sum, the Niesar settlement and the resultant dismissal of all cross-claims for contribution creates no losers, but only winners. The plaintiffs will obtain the maximum amount of payment they could likely expect to recover from the Niesar defendants and will receive it at an advantageous time without the delay, added cost, and inherent risk they would incur from trial. The Niesar defendants will avoid considerable litigation expenses and will release their time and energies for more productive matters. The non-settling defend-

ants will receive a guaranteed setoff against any liability they may incur.[24] Finally, the judicial system as a whole will benefit by the partial resolution of these complex and burdensome actions.[25]

IT IS SO ORDERED.

claims will be determined without reference to trebled damages.

24. Since the parties herein have not yet briefed the issue, the court does not at this time decide the precise amount of the setoff to which the non-settling defendants will be entitled. Two different methods of calculating setoff amounts are employed by the various state settlement bar statutes: (1) the *pro tanto* method (reduction of judgment by the amount of the settlement) and (2) the *pro rata* method (reduction of judgment by the. proportionate share of the settling defendants' liability. *See* Adamski, *Contribution and Settlement in Multi-party Actions under Rule 10b–5,* 66 Iowa L.Rev. 533 (1981). Primarily, the difference between the two methods is in the allocation of the risk that the settlement amount will prove less than the settling defendants' proportionate share of any eventual judgment. Under the *pro tanto* method, this risk is borne by the non-settling defendants; under the *pro rata* method, this risk is borne by the plaintiffs.

25. The Niesar defendants have requested the court to enter a final judgment adjudicating their rights and liabilities in these actions. Pursuant to F.R.Civ.P. 54(b), in an action involving multiple parties and/or claims, "the court may direct the entry of final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." Upon consideration, the court concludes that there is no just reason for delay and therefore directs the Clerk of the Court to enter a final judgment against the Niesar defendants.

However, to advance the ultimate resolution of this litigation, the court will certify the present order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). In addition, all proceedings in these actions shall be stayed as against the Niesar defendants pending such appeal, if any.