**RESOLUTION TRUST CORPORATION,
Plaintiff,**

v.

Daniel **PLATT, Robert Chappell, Spencer Smith, George Rieken, Theodore Tchoukaleff, Emert Wyss, Jeffrey Gershman, William McCord, Raymond Stillwell, Arthur Greenwood, Gerald Walters, Henry Stern, Gary Heifetz, Richard Sheehan, Ronald Lurie, Alan Popkin, James Chervitz, Jacob Reby, Pat Simons, Stanley Goodkin, Michael Wetmore, Steven Stone, Jeffrey Michelman, Lee Placio, Jr., Ira Blank, Renee Poe, Douglas Burdette, Timothy Noelker, Harry Meyer, Steven Spewak, Patrick Costello, Barbara Lageson, Jeffrey Klar, Alan Blank, Steven Leyton, and Wyss, Stillwell, Greenwood & Walters, an Illinois General partnership, Defendants.**

No. 92–CV–277–WDS.

United States District Court,
S.D. Illinois.

Aug. 24, 1993.

Randall F. Scherck, Lashly, Baer & Hamel, St. Louis, MO, Terry S. Arbit, Resolution Trust Corp., Elk Grove Village, IL, Stephen Novack, Donald A. Tarkington, Novack & Macey, Mary C. Veed, Fay Clayton, Robinson, Curley & Clayton, Chicago, IL, Carolyn A. Arthur, Resolution Trust Corp., Overland Park, KS, Paul A. Grana, St. Louis, MO, Scott Williams, Overland Park, KS, for Resolution Trust Corp.

Jeffrey J. Lowe, Robert F. Ritter, Gray & Ritter, St. Louis, MO, for Daniel Platt.

David D. Crane, Reinert, Duree & Crane, P.C., St. Louis, MO, for Robert Chappell.

Robert Chappell, pro se.

G. Edward Moorman, Williamson, Webster, Groshong, Falb & Gibson, Robert D. Larson, Roland W. Griffith, Jr., Marshall H. Smith, Steven W. Selby, Smith, Allen, Mendenhall, Delaney & Associates, Alton, IL, for Spencer Smith.

Marshall H. Smith, Steven W. Selby, Smith, Allen, Mendenhall, Delaney & Associates, Alton, IL, for George Rieken.

John L. Davidson, St. Louis, MO, for Emert Wyss.

Michael Reda, Evans & Dixon, Gary E. True, Burroughs, Hepler, Broom, MacDonald & Hebrank, Edwardsville, IL, Henry D. Menghini, Evans & Dixon, Lisa A. Pake,

Robert T. Haar, Kohn, Shands, Elbert, Gianoulakis & Giljum, St. Louis, MO, for Jeffrey Gershman.

David B. Helfrey, Michael H. Musich, Helfrey, Simon & Jones, St. Louis, MO, James S. Wiederschall, Woodland Hills, CA, for William McCord.

A.J. Bronsky, John L. McMullin, III, Brown & James, St. Louis, MO, for Raymond Stillwell, Wyss, Stillwell, Greenwood and Walters.

A.J. Bronsky, John L. McMullin, III, Brown & James, St. Louis, MO, for Arthur Greenwood.

Gerald R. Walters, Peel & Beatty, Edwardsville, IL, for Gerald Walters.

Michael Reda, Edwardsville, IL, Henry D. Menghini, Evans & Dixon, St. Louis, MO, for Henry Stern, Gary Heifetz, Richard Sheehan, Ronald Lurie, Alan Popkin, James Chervitz, Jacob Reby, Pat Simons, Steven Spewak, Barbara Lageson.

Joel A. Kunin, Mark M. Silvermintz, Carr, Korein, Tillery, Kunin, Montroy & Glass, East St. Louis, IL, Michael Reda, Edwardsville, IL, Henry D. Menghini, Evans & Dixon, St. Louis, MO, for Stanley Goodkin.

Michael Reda, Edwardsville, IL, Henry D. Menghini, Evans & Dixon, St. Louis, MO, for Michael Wetmore, Steven Stone.

Theodore D. Ponfil, Alan G. Gerson, Blumenfeld, Kaplan & Sandweiss, P.C., St. Louis, MO, for Jeffrey Michelman.

Mark R. Henry, Lee J. Placio, Jr., Clayton, MO, for Lee Placio, Jr.

Joel A. Kunin, Mark M. Silvermintz, Carr, Korein, Tillery Kunin, Montroy & Glass, East St. Louis, IL, Michael Reda, Edwardsville, IL, Henry D. Menghini, Evans & Dixon, St. Louis, MO, for Ira Blank, Renee Poe.

Douglas Burdette, pro se.

Michael Reda, Edwardsville, IL, Louis F. Bonacorsi, Kenneth J. Mallin, Coburn & Croft, St. Louis, MO, Henry D. Menghini, Evans & Dixon, St. Louis, MO, for Timothy Noelker.

Timothy Noelker, pro se.

Michael Reda, Edwardsville, IL, David E. Morgans, Mark D. Brent, Brigid E. Kennedy, Williams & Montgomery, Chicago, IL, Henry D. Menghini, Evans & Dixon, St. Louis, MO, for Harry Meyer.

Steven Spewak, pro se.

Raymond R. Fournie, Armstrong, Teasdale, Schlafly & Davis, St. Louis, MO, for Commonwealth Land Title Ins. Co.

### *MEMORANDUM AND ORDER*

STIEHL, Chief Judge:

This matter is before the Court on various motions relating to settlements entered into between plaintiff and several defendants.

On April 2, 1993, and June 16, 1993, the Court entered general orders of dismissal based upon reported settlements between plaintiff and the "Popkin and Stern" defendants, and the "Wyss, Stillwell, Greenwood and Walters" defendants, respectively. Plaintiff thereafter filed a motion requesting the Court to modify the April 2, 1993 Order. Spencer Smith, one of the non-settling defendants, filed a motion to vacate the April 2 Order, asserting that the settling defendants should remain parties. Emert Wyss, Arthur Greenwood, Raymond Stillwell, and the law firm of Wyss, Stillwell, Greenwood, and Walters (WSG & W), who have since become settling defendants, filed two similar motions to vacate the April 2 Order. Jeffrey Gershman, one of the settling defendants, filed a memorandum in opposition to the motions to vacate the April 2 Order, and asserted his own motion to impose a settlement bar based upon the proportionate fault rule. Jeffrey Michelman, another settling defendant, has joined in Gershman's motion. Subsequently, plaintiff filed a motion requesting the Court to schedule a good faith hearing to approve the settlements with the Popkin and Stern defendants and Jeffrey Gershman, and to impose a pro tanto settlement bar rule.

As an initial matter, the Court must resolve the parties' dispute as to the appropriate settlement bar to impose. In a previous Order, the Court held that federal common law controls this litigation. Although the Court adopted certain aspects of the Illinois law of director and officer liability as

the federal rule of decision governing some of plaintiff's claims, that holding did not, as plaintiff suggests, extend to a wholesale adoption of Illinois contribution principles. Therefore, the Court will rely upon federal common law in determining the type of settlement bar to apply.

There are two general types of settlement bars recognized by federal courts: 1) the pro tanto bar, in which the judgment against each non-settling defendant is reduced by the amount paid by the settling defendants; and 2) the proportionate fault bar, in which the jury assesses the relative culpability of both the settling and non-settling defendants, and the non-settling defendants pay a commensurate percentage of the judgment.

As to plaintiffs it is clear that the method of set-off chosen affects the desirability of a proposed partial settlement. For example plaintiffs bear the risk of a "bad" settlement under the "proportionate" rule, while under the "pro tanto" rule, the risk passes to the non-settling defendants and plaintiffs gain more certainty from the earlier resolution of the set-off figure. Moreover, the "proportionate" method entails a delay in ascertaining the final amount of set-off which makes it difficult to frame a notice to the class that fairly presents the merits of the proposed settlement.... As to non-settling defendants ... the choice of set-off method determines to a large extent the manner in which a defense should be made at trial. The extent of wrongdoing of the settling defendants in relation to [the non-settling defendants'] liability is either highly relevant (under the "proportionate" rule), minimally important (under the "pro rata" rule), or not important at all (under the "pro tanto" rule). [The non-settling defendants are] entitled to know what the law of the case is in advance of trial, not on the eve, after discovery is concluded and witnesses have been prepared.

*In re Jiffy Lube Securities Litigation,* 927 F.2d 155, 161 (4th Cir.1991). If a proportionate fault rule is used, it is unnecessary to determine whether the settlement was achieved in good faith. *See RTC v. Gallagher,* 800 F.Supp. 595 (N.D.Ill.1992).

Although the Court recognizes the concerns with the pro tanto approach expressed by Judge Posner in *Donovan v. Robbins,* 752 F.2d 1170, 1181 (7th Cir.1984), a case involving the settlement of an ERISA action, this Court finds, nonetheless, that a pro tanto settlement bar is appropriate in this case. Unlike an ERISA, or an admiralty action, in this case the plaintiff is the Federal Government, acting through the RTC. Congress established the RTC to contain, manage and resolve failed savings associations and strengthen the civil sanctions for defrauding or otherwise damaging depository institutions and their depositors. It is well recognized that the losses in the banking industry are far greater than imagined at the time of the creation of the RTC, and those losses are borne by the taxpayers. The uniquely public role of the RTC in cases like this makes application of the proportionate fault rule, which places upon the settling plaintiff (and therefore the public) the cost of a settlement versus judgment discrepancy, less than appealing. This is not an insignificant consideration, and it weighs in this Court's determination to apply a pro tanto bar to this action.

Another feature of the pro tanto approach is that it encourages any remaining, non-settling, defendants to settle. This Court, as well as most federal courts in the country, is overburdened by a crowded docket. Therefore, "the promotion of settlement is, as a practical matter 'an absolute necessity.'" *Alvarado Partners, L.P. v. Mehta,* 723 F.Supp. 540, 551 (D.Colo.1989), *quoting Nelson v. Bennett,* 662 F.Supp. 1324 (E.D.Cal. 1987). The importance of early disposition of litigation is particularly acute in complex cases such as this, which place a tremendous strain on already scarce judicial resources.

The proportionate fault approach may be attractive in cases in which settlement occurs early in the litigation, prior to a great deal of discovery. However, the extensive pretrial discovery and detailed settlement negotiations which have occurred in this case make it particularly suited to the application of a pro tanto bar. The Court recognizes the

temptation to forego the good faith hearing necessary for a pro tanto settlement bar, and to merely apply the percentage fault approach. However, the ultimate result would clearly be a jury trial in which the non-settling defendants litigate, at great length, the respective percentages of fault of both the non-settling and the settling, and no longer present, defendants. Such a trial would expend far more judicial resources than a pro tanto hearing, further enhancing the costs to the public, the parties, and to the Court.

■ Having concluded that a settlement bar based upon the pro tanto approach is appropriate in this case, it is necessary to determine whether the settlement agreements at issue were achieved in "good faith." The factors relevant to a good faith inquiry include: (1) the risk of victory or defeat; (2) the size of a potential verdict; (3) the defendants' solvency, including any insurance coverage; (4) the cost of the litigation to date and if the matter proceeded to trial (with or without the settling defendants); (5) the absence of collusion; (6) the thoroughness of the negotiations and the adequacy and nature of the investigations informing such negotiations; and (7) the interests of the public. *See, generally, Donovan,* 752 F.2d at 1181.

In support of the motion for a good faith finding, plaintiff's attorney stated that the settlements were based upon extensive negotiations and a thorough review of information obtained during discovery to determine the strength of plaintiff's claims, the solvency of the defendants, and the costs of the litigation. With regard to the Popkin and Stern defendants, who have settled for $350,000, plaintiff's attorney indicated that the value of the claim is significantly reduced by the firm's bankruptcy. The attorney for the Popkin and Stern defendants indicated that, despite plaintiff's position that their exposure is in excess of $1 million, the settlement is fair given the difficulties with plaintiff's claim and his clients' limited solvency. He added that his clients have incurred more than $100,000 in legal bills to date, and given the fact that a trial would last 7–10 days, concluded that a $350,000 settlement was not unreasonable.

With regard to defendant Gershman in his capacity as a director, information developed at the hearing indicates that, as a Popkin and Stern partner, he is involved in the bankruptcy proceeding as well. It further appears that he is contributing approximately $100,-000 to the bankruptcy proceeding, which represents the extent of his attachable assets, in addition to the $67,915 he is borrowing in order to contribute to the settlement here. Gershman's attorney stated that, although his client has a strong defense based upon the business judgment rule, he has incurred approximately $60,000 in legal fees to date, and another $70–100,000 would be required to try the case. For that reason, Gershman's attorney concluded that the settlement was fair.

Defendant Platt settled for $250,000. His attorney stated that his client faced an even or better chance of a judgment in excess of $5 million. He further stated that, although Platt's individual assets are worth approximately $3 million, only a small percentage are attachable. The attorney further noted that he has charged Platt approximately $35,000 in fees to this point, and would need $60–65,000 more to try the case. Given Platt's lack of insurance, and the uncollectibility of a large judgment, he concluded that the settlement was fair and reasonable.

Defendant WSG & W settled for $100,000. The attorney for WSG & W indicated that the liability of the firm and its partners is based solely upon the actions of defendant Wyss, only a very small portion of which constituted legal work for which they are vicariously liable. The attorney further stated based upon the opinion of an expert, that plaintiff's case against his clients is very weak because it is relying upon inappropriate appraisal guidelines. However, based upon the fact that his clients have insurance with limits of $350,000, have already incurred approximately $30,000 in fees, and would incur $50–60,000 more in fees and costs if the case went to trial, the attorney asserted that a settlement of $100,000 was fair and reasonable.

Defendant Wyss settled for $15,000. Wyss' attorney stated that he would show at trial that Gershman was the primary force

behind the allegedly improper loans and would have vigorously pursued a contribution action against Gershman and the Popkin and Stern defendants, but for the bankruptcy. He further stated that certain evidence relating to Wyss' third party action against Commonwealth Land Title Insurance Company would have revealed flaws in plaintiff's investigation, possibly weakening its case. Wyss testified during the hearing that, due to an administrative oversight which occurred when WSG & W disbanded in 1985, he is not covered by insurance for this action, and thus his $15,000 contribution to the settlement will be derived from his personal assets. Wyss further testified that he has an ownership interest in three closely held businesses, but that all three are struggling and he will have to borrow the money necessary for this settlement. Financial documents provided by Wyss indicate that he has a negative net worth.

The attorney for defendant Noelker stated that his client's liability is based solely upon Noelker's short association with the law firm of Popkin and Stern. He further stated that Noelker was with that firm for less than one year, during which time only one of the transactions at issue took place, and that this transaction did not implicate any liability on the part of the Popkin and Stern defendants. Noelker's attorney stated his assessment that plaintiff was potentially liable for filing an improper claim and that, while Noelker agreed to pay $200 as part of the settlement, the thrust of the agreement was the giving of mutual releases by the parties.

Finally, defendant Walters, acting pro se, stated that his portion of the settlement is included in the WSG & W payment. He further stated that he denies any liability for the alleged losses and questions whether he was a partner with WSG & W during any of the periods relevant to plaintiff's suit. Walters also stated that he is without insurance and essentially without assets.

There is absolutely no indication that the settlements at issue were the result of any collusion or side agreements. The foregoing reveals that plaintiff will recover approximately $783,000 from the settling defendants, in addition to any judgment obtained against the remaining defendants. In its complaint, plaintiff seeks damages in excess of $3.2 million. Although the total settlement represents slightly less than one-third of this amount, the hearing revealed that the settling defendants alone have spent close to $200,000 on this case, and that the collectibility of many of the claims is somewhat limited. It further appears that a trial with all the defendants could last up to two weeks, imposing upon both the taxpayers and the private parties involved substantial additional expense. Although plaintiff's chances of victory appear strong, the issues involved are complex, and there appears at least some difference of opinion among the experts as to the standard of care involved. Based upon all of the foregoing, the Court concludes that the settlement agreements at issue were made in good faith and are fair, reasonable, and in the best interests of the public.

Accordingly, plaintiff's motion to approve its settlement agreements with defendants Henry Stern; Gary Heifetz; Ronald Lurie; Alan Popkin; James Chervitz; Jacob Reby; Pat Simons; Stanley Goodkin; Michael Wetmore; Steven Stone; Jeffrey Michelman; Lee Placio, Jr.; Ira Blank; Renee Poe; Douglas Burdette; Timothy Noelker; Harry Meyer; Steven Spewak; Barbara Lageson; Alan Blank; Steven Leyton; Jeffrey Gershman; Emert Wyss; Raymond Stillwell; Arthur Greenwood; Wyss, Stillwell, Greenwood & Walters, an Illinois General partnership; Daniel Platt; and Gerald Walters; (Doc. # 354) is **GRANTED,** and said agreements are hereby **APPROVED** as made in good faith.

Plaintiff's motion to amend the Court's April 2, 1993 Order (Doc. # 321) is **GRANTED** and said Order is hereby **AMENDED** to provide that this action is **DISMISSED** with prejudice as to the above-named defendants, without costs and with the right, upon good cause shown within sixty (60) days, to reopen the action if settlement is not consummated; the clerk of the Court is **DIRECTED** to serve copies of this Order, by United States mail, upon the attorney of record for the parties appearing in this cause.

Plaintiff's motion to impose a pro tanto settlement bar (Doc. # 354) is also **GRANT-**

ED, and this Court's April 2, 1993 Order is further **AMENDED** to provide that any recovery by plaintiff against the defendants remaining in this case shall be reduced by the total amount of any approved settlements; and further that the above-named settling defendants are **DISCHARGED** from any·further liability to any non-settling defendants for any claims arising out of said non-settling defendants' liability for claims asserted by plaintiff in this case.

The motions of defendants Spencer Smith, Emert Wyss, Arthur Greenwood, Raymond Stillwell, and Wyss, Greenwood, Stillwell & Walters, an Illinois General partnership, to vacate the Court's Order of April 2, 1993 (Docs. # 325, # 329, # 330) are hereby **DENIED.**

Defendant Jeffrey Michelman's motion to join in Gershman's alternative motion to impose a settlement bar (Doc. # 348) is **GRANTED.** The alternative motion of defendants Jeffrey Gershman and Jeffrey Michelman to impose a settlement bar based upon the proportionate fault rule (Doc. # 346) is hereby **DENIED.**

**IT IS SO ORDERED.**