[No. A062536. First Dist., Div. Three. Sept. 14, 1994.]

ROBERT L. HUTCHINS, Plaintiff and Respondent, v.
JUNEAU TANKER CORPORATION, Defendant and Appellant.

## COUNSEL

Emard & Perrochet, Wayne F. Emard and Kevin J. Odell for Defendant and Appellant.

Miller, Brodsky & Baskin, Eugene A. Brodsky and Ellen Shapiro for Plaintiff and Respondent.

## OPINION

**MERRILL, J.**—Respondent Robert L. Hutchins filed a seaman's personal injury action under the Jones Act (46 U.S.C. § 688 et seq.) and general maritime law against appellant Juneau Tanker Corporation (Juneau)[1] and OMI Corporation (OMI). The action was filed in superior court pursuant to the "savings to suitors clause" which provides state courts with concurrent maritime jurisdiction. (28 U.S.C. § 1333(1).)

### FACTUAL AND PROCEDURAL BACKGROUND

On December 22, 1987, Hutchins was serving as an able-bodied seaman aboard Juneau's vessel SS Overseas Juneau. His assigned overtime work that day was the lubrication or "slushing" of two of the three mooring wires spooled on winches at the stern of the vessel's main deck. Slushing of the wire rope required removal of old grease and application of new grease. The entire length of the wire had to be pulled off the core of the drum in preparation of this task. At least three able-bodied seaman were involved in

---

[1] Hutchins's original and first amended complaint named Maritime Overseas Corporation, the purported owner of the SS Overseas Juneau, as a defendant. The parties entered a stipulation whereby Maritime Overseas Corporation would be dismissed from the action without prejudice, the answer of Maritime Overseas Corporation would be deemed the answer of Juneau and that all further pleadings could be titled Hutchins v. Juneau Tanker Corporation.

this slushing operation. The bosun had ordered Hutchins to coil or "fake" the wire rope into figure eight's as it came off the warping capstan. This required pulling the wire off the capstan and reshaping it into figure eight's on the deck. The bosun considered the job of pulling the wire off the warping capstan or warping head to be a strenuous job.

Hutchins worked from 8 a.m. until 11:30 a.m. performing these overtime duties and then took a lunch break. He returned to the slushing operation at approximately 1 p.m. He pulled and faked three or four figure eight's. As he was pushing the next coil of wire down to the deck from chest height, he felt a sudden popping sensation, accompanied by sharp pain directly below his sternum. He dropped the wire and bent over from pain. At the bosun's suggestion, Hutchins rested for approximately 20 minutes. The pain subsided and he returned to work.

Hutchins told the medical officer about his injury but he decided to stay aboard the vessel when it discharged its cargo at a San Francisco Bay refinery. On December 28, 1987, as the SS Overseas Juneau was making its return trip to Valdez, Hutchins informed a replacement medical officer about the lump and discoloration that had formed in the area where he had felt the popping sensation. In Valdez, a doctor in a port clinic diagnosed Hutchins with a ventral hernia and found him not fit for duty. Hutchins had surgery for repair of the hernia on January 7, 1988.

After four months of recuperation, Hutchins was released by his treating physician, Dr. Muhammad Aswaq, to return to work. However, Dr. Aswaq did advise him that the heavy lifting required in shipboard work did expose him to increased risk of recurrence of the ventral hernia.

From May 5, 1988, to August 22, 1988, Hutchins served as an able seaman on the Bayridge, performing various strenuous jobs, without suffering a recurrence of the ventral hernia. He then worked for six days aboard the MV Ranger, without injury.

On November 14, 1988, Hutchins joined the OMI Sacramento as an able seaman. On December 15, 1988, while the bosun, Hutchins and three other able seamen were attempting to tip a spool of wire weighing in excess of 1,200 pounds, he suffered a recurrence of the ventral hernia as well as a right inguinal hernia. Dr. Robert Murray performed the second surgical repair on the hernias on December 29, 1988. On April 3, 1989, Dr. Murray found Hutchins fit for sea duty.

On April 14, 1989, Hutchins began service on the USS Great Land and within two weeks suffered a recurrence of his ventral hernia. Following

another surgical repair, his union doctor pronounced him unfit for sea duty permanently.

Hutchins's action against Juneau, filed March 1988, alleged causes of action under general maritime law for unseaworthiness of the vessel and under the Jones Act (46 U.S.C. § 688 et seq.) for negligence. The complaint was amended in February 1989 to name OMI as a defendant for damages resulting from Hutchins's December 15, 1988, injury.

On April 6, 1992, the date set for trial, Hutchins and OMI reached a settlement in the amount of $55,000 which was determined to be in good faith under Code of Civil Procedure[2] section 877.6.[3]

Juneau made a motion *in limine,* seeking the admission of evidence of OMI's negligence and the unseaworthiness of its vessel and Hutchins's comparative fault in connection with his December 15, 1988, injury aboard the OMI Sacramento. The motion was denied.

By special verdict the jury found Hutchins suffered damages in the amount of $434,533 and that he was 53 percent at fault and Juneau was 47 percent at fault for the injuries. In accordance with the jury's special verdict, and the pro tanto reduction of $55,000, the amount of the OMI settlement, the trial court entered judgment against Juneau in the amount of $149,230.51. Juneau's motion for new trial was denied.

Juneau appeals from the judgment, challenging, inter alia, the court's exclusion of evidence of OMI's negligence and the unseaworthiness of OMI's vessel, and the court's refusal to instruct the jury to determine settling tortfeasor OMI's proportional share of fault.

## DISCUSSION

■ On appeal and during proceedings below Juneau's position has been that under federal maritime law, where the plaintiff has settled with one of the defendants prior to trial, there must be an allocation of fault among all the defendants, including the settling defendants. Juneau has maintained that

---

[2]All further statutory references are to the Code of Civil Procedure.

[3]Section 877.6 provides in pertinent part: "(a) Any party to an action wherein it is alleged that two or more parties are joint tortfeasors . . . shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors . . . . [¶] (c) A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor . . . from any further claims against the settling tortfeasor . . . for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault."

any award of damages against the remaining defendants must be reduced by the settling defendant's proportionate share of fault and not by a pro tanto credit for the amount of the settlement as required by section 877.6. Accordingly, Juneau submits the trial court erred in excluding evidence of OMI's negligence and the unseaworthiness of its vessel in connection with Hutchins's injuries suffered aboard its vessel and in refusing instructions to the jury to allocate responsibility for the damage in proportionate share among all the defendants. Likewise, Juneau urges error in the application of a pro tanto credit in the amount of the settlement pursuant to section 877.6. Additionally, Juneau contends the trial court erred in excluding evidence of Hutchins's comparative fault in connection with the injury he suffered on OMI's vessel.

During the pendency of Juneau's appeal, the United States Supreme Court's opinion in *McDermott, Inc.* v. *AmClyde* (1994) 511 U.S. __ [128 L.Ed.2d 148, 114 S.Ct. 1461] (*McDermott*), was issued, adopting the proportionate share approach. *McDermott* is fully applicable to the case before us and requires that we reverse the judgment.

In *McDermott*, an admiralty case involving a construction accident in the Gulf of Mexico, the plaintiff settled with some of the defendants prior to trial, agreeing to dismiss their claims with prejudice, release them from liability and indemnify them against any contribution action in exchange for a sum of money. Two defendants remained in the case following settlement. The jury determined the total amount of damages and allocated responsibility in proportionate share among the parties. The district court entered judgment in accordance with the jury's determination of each parties' proportionate share of fault, denying the nonsettling defendants' motion to apply a pro tanto credit for the amount of the settlement. The Fifth Circuit Court of Appeals reversed, applying a pro tanto settlement credit against the liability of one of the defendants after determining a contractual provision precluded recovery against the other.

The unanimous United States Supreme Court reversed, holding that the liability of nonsettling defendants in a federal maritime case should be calculated with reference to the jury's allocation of proportionate responsibility. The *McDermott* court first noted that in *United States* v. *Reliable Transfer Co.* (1975) 421 U.S. 397 [44 L.Ed.2d 251, 95 S.Ct. 1708] (*Reliable Transfer*), it had abandoned a former rule for the assessment of damages in federal maritime cases in favor of a rule assessing damages on the basis of proportionate fault. The high court noted that the interest in fairness promoted by the new rule outweighed other interests served by the old rule. (*McDermott, supra*, 511 U.S. __, __ [128 L.Ed.2d 148, 155-156, 114 S.Ct. 1461, 1465].)

Unlike the proportionate fault approach adopted in *Reliable Transfer*, a consensus among scholars and judges had not been formed with respect to the manner in which a settlement credit should be applied in federal maritime cases. (*McDermott, supra*, 511 U.S. __, __ [128 L.Ed.2d 148, 155-156, 114 S.Ct. 1461, 1465].) The *McDermott* court analyzed three alternatives, as set forth by the American Law Institute, for determining how such a credit should be determined: (1) pro tanto setoff with right of contribution against the settling defendant; (2) pro tanto setoff without a right of contribution against the settling defendant; and (3) the proportionate share approach. (*McDermott, supra*, 511 U.S. __, __ [128 L.Ed.2d 148, 155-159, 114 S.Ct. 1461, 1465-1467].) The court stated that in choosing among the alternatives, three considerations were paramount: consistency with *Reliable Transfer*'s proportionate fault approach, promotion of settlement and judicial economy.

The first alternative was criticized primarily as being a disincentive to settlement. The second alternative, the pro tanto approach, would frequently not reflect the nonsettling defendant's equitable share as settlement with one defendant with less than its equitable share requires the nonsettling defendant to pay more than its share. The high court was critical of the good faith hearing procedure instituted in many states as not guaranteeing an equitable allocation of liability. The likelihood of inequitable apportionments of liability is not in accord with *Reliable Transfer*. (*McDermott, supra*, 511 U.S. __, __ [128 L.Ed.2d 148, 158-159, 114 S.Ct. 1461, 1467].)

The *McDermott* court noted that as to the remaining considerations of encouraging settlements and judicial economy, the pro tanto approach did not clearly serve to advance either interest. (*McDermott, supra*, 511 U.S. __, __ [128 L.Ed.2d 148, 160-161, 114 S.Ct. 1461, 1467-1469].) *McDermott* concluded, ". . . we are persuaded that the proportionate share approach is superior, especially in its consistency with *Reliable Transfer*." (*McDermott, supra*, 511 U.S. __, __ [128 L.Ed.2d 148, 162, 114 S.Ct. 1461, 1470].)

█ A state which has concurrent jurisdiction of in personam maritime causes of action under the savings to suitors clause " ' "is free to adopt such remedies, and to attach to them such incidents, as it sees fit" so long as it does not attempt to . . . make changes in the "substantive maritime law." ' [Citations.]" (*Offshore Logistics, Inc.* v. *Tallentire* (1986) 477 U.S. 207, 222 [91 L.Ed.2d 174, 222, 106 S.Ct. 2485].) "[I]n such cases the extent to which state law may be used to remedy maritime injuries is constrained by a so-called 'reverse-Erie' doctrine which requires that the substantive remedies afforded by the States conform to governing federal maritime standards. [Citations.]" (*Id.*, at p. 223 [91 L.Ed.2d at p. 190].)

█ Hutchins argues the *McDermott* opinion does not preclude application of section 877.6. Citing *American Dredging Co.* v. *Miller* (1994) 510

U.S. __ [127 L.Ed.2d 285, 114 S.Ct. 981] (*American Dredging*), Hutchins submits the good faith settlement procedure and application of a settlement credit against the nonsettling defendant's liability is a matter of procedure only and neither violates a characteristic feature of maritime law nor subverts its proper harmony. We disagree.

In *American Dredging*, the United States Supreme Court ruled that in admiralty cases filed in a state court under the Jones Act and the "saving to suitors clause," federal law does not preempt state law concerning the doctrine of forum non conveniens. (*American Dredging, supra*, 510 U.S. __, __ [127 L.Ed.2d 285, 293-294, 114 S.Ct. 981, 985].) The high court, relying on *Southern Pacific Co.* v. *Jensen* (1917) 244 U.S. 205, 216 [61 L.Ed. 1086, 1098, 37 S.Ct. 524] (*Jensen*), analyzed that the proviso against a state court adopting remedies which change the substantive maritime law is violated when a state remedy " 'works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate relations.' [Citation.]" (*American Dredging, supra*, 510 U.S. __, __ [127 L.Ed.2d 285, 293-294, 114 S.Ct. 981, 985].)

The *American Dredging* court found the forum non conveniens doctrine did not work material prejudice to a characteristic feature of the general maritime law as it did not originate in admiralty or have exclusive application there. The high court also found that the uniform application of forum non conveniens was unnecessary to maintain the proper harmony of maritime law under *Jensen*. The court considered that the forum non conveniens doctrine, essentially a venue rule, is procedural rather than substantive. The court contrasted the procedural forum non conveniens doctrine with substantive matters such as a state's application of contributory negligence as a bar to recovery and a state's application of the burden of proof upon the plaintiff. (*American Dredging, supra*, 510 U.S. __, __ [127 L.Ed.2d 285, 294-295, 114 S.Ct. 981, 986-988].) *American Dredging* reasoned that the forum non conveniens doctrine "does not bear upon the substantive right to recover, and is not a rule upon which maritime actors rely in making decisions about primary conduct—how to manage their business and what precautions to take." (*American Dredging, supra*, 510 U.S. __, __ [127 L.Ed.2d 285, 297-298, 114 S.Ct. 981, 988-989], fn. omitted.)

The manner in which a nonsettling defendant's liability is reduced, whether by a proportionate share approach or by a pro tanto credit, has a direct impact upon the substantive right to recover. The trial court's application of section 877.6 is not merely a matter of procedure. Consistent application of rules pertaining to calculation of the remaining defendant's liability is required for uniformity and harmony in general maritime law.

Hutchins argues that *McDermott* did not directly address application of the proportional share approach where the defendants are successive tortfeasors in two separate incidents. In such cases, Hutchins continues, the proportionate share rule will not serve the interest of judicial economy as a lengthier jury trial will be required to determine the settling defendant's role.

First, *McDermott* plainly did not limit application of the proportionate share approach to cases concerning joint tortfeasors in the same incident. Moreover, the *McDermott* court's comparison of the two approaches with respect to judicial economy was inconclusive and clearly not the decisive factor in its decision. The court analyzed that the impact on judicial economy by either the proportionate share or the pro tanto rule was "ambiguous." The relative fault of the parties would have to be determined under both approaches: in the pro tanto approach, a separate pretrial good faith hearing would be the setting for determining the settling defendant's share of responsibility; in the proportionate share approach, additional trial time would be required for allocation of responsibility. The high court found the potential for time saving existed under either approach, depending upon a host of factors. The court noted the uncertainty in such factors as the length of the good faith hearing, the possibility the remaining defendant settles before trial, and the possibility that little or no additional trial time would be required under the proportionate share approach. The court concluded "[t]he pro tanto rule thus has no clear advantage with respect to judicial economy." (*McDermott, supra,* 511 U.S. __, __ [128 L.Ed.2d 148, 161-162, 114 S.Ct. 1461, 1470], fn. omitted.)

*McDermott* leaves no doubt that the trial court's rulings excluding evidence of OMI's negligence and the unseaworthiness of its vessel, refusing instructions to the jury to allocate fault in proportionate shares among all defendants and applying a pro tanto settlement credit pursuant to section 877.6 conflict with federal maritime law and are therefore error.

Additionally, Hutchins's comparative fault in connection with the injury he suffered on OMI's vessel is directly related to the question of jury allocation of fault. ▮▮ ▮▮ Under the Jones Act and the general maritime law that governs unseaworthiness claims, the doctrine of comparative negligence applies. (*Pope & Talbot, Inc.* v. *Hawn* (1953) 346 U.S. 406, 408-409 [98 L.Ed. 143, 150-151, 74 S.Ct. 202]; *Socony-Vacuum Co.* v. *Smith* (1939) 305 U.S. 424, 429 [83 L.Ed. 265, 269, 59 S.Ct. 262]; *Ammar* v. *American Export Lines, Inc.* (2d Cir. 1964) 326 F.2d 955, 959-960.) Thus, if a seaman's negligence has contributed to the cause of his injury, his recovery should be reduced proportionately. (*Socony-Vacuum Co.* v. *Smith, supra,* 305 U.S. at p. 429 [83 L.Ed. at p. 269].) A seaman's negligence must be

considered whether it occurs at the commencement of the chain of causation or at the end. Therefore, damages may be reduced due to a seaman's negligence in a subsequent accident which aggravated damages from the shipboard accident. (*Ammar* v. *American Export Lines, Inc.*, *supra*, 326 F.2d at pp. 959-960.)

## DISPOSITION

The trial court erred in excluding OMI's negligence and the unseaworthiness of its vessel; rejecting jury instructions for the allocation of fault according to each defendant's proportionate share; and applying section 877.6 to the jury's determination of Juneau's liability. The exclusion of evidence of Hutchins's comparative fault in connection with the OMI injury was also an erroneous ruling. (Cal. Const., art. VI, § 13.) In view of our decision, we need not address Juneau's remaining contentions of instructional error, insufficiency of evidence to support the verdict and inconsistency of the verdict.

The judgment is reversed and the action is remanded to the trial court for a new trial. Appellant is awarded costs on appeal.

White, P. J., and Jenkins, J.,* concurred.

A petition for a rehearing was denied October 12, 1994, and appellant's petition for review by the Supreme Court was denied December 15, 1994.

---

*Judge of the Alameda Superior Court sitting under assignment by the Chairperson of the Judicial Council.