Donald SLAVEN; Salvatore Russo; Carl Gassaway; Yeriko Nitta, d/b/a The Seacliff Motel; Salvatore Manzella; Steven Panto and Donna Panto; Heinz Pet Products Company, a division of Star–Kist Foods, Inc., a California corporation; Gregory Kuglis; and Jack Morici, On Behalf of Themselves and All Others Similarly Situated, Plaintiffs,

v.

BP AMERICA, INC., BP Oil Shipping Co., U.S.A.; BP Oil Supply Company; American Trading and Transportation Company; The Trans–Alaska Pipeline Liability Fund; Golden West Refining Company; and Brandenburger Marine, Inc., Defendants.

Nos. CV 90–0722 RJK (JRx), CV 90–0733, CV 90–2619, CV 91–0334, CV 91–0515, CV 91–3363.

United States District Court, C.D. California.

March 21, 1997.

Marc M. Seltzer, Christina A. Snyder, Gretchen M. Nelson, Corinblit & Seltzer, Los Angeles, CA, Merrill G. Davidoff, Daniel Berger, Peter Nordberg, Berger & Montague, P.C., Philadelphia, PA, Stephen D. Oestreich, Wolf, Popper, Ross, Wolf & Jones, New York City, for Donald Slaven, et al.

Howard D. Sacks, San Pedro, CA, for Branko Sindicich, et al.

John S. Gray, Law Offices of John S. Gray, Newport Beach, CA, for Newport Sailing Club, Inc.

Fred J. DiBernardo, San Pedro, CA, George V. Allen, Jr., Jeffrey L. Yablon, Maryelena Pardo, Shaw, Pittman, Potts & Trowbridge, Washington, DC, for State Fish Company, Inc., et al.

James H. Ackerman, Long Beach, CA, Gail Hutton, City Attorney, Huntington Beach, CA, for City of Huntington Beach.

John Buttolph, Santa Barbara, CA, for Peter Guglielmo and Aneillo Guglielmo.

Phillip D. Kohn, City Attorney, Rutan & Tucker, Costa Mesa, CA, for the City of Laguna Beach.

Joseph M. Murphy, Balboa Island, CA, for Jack Morici.

Gregory W. Stepanicich, City of Seal Beach, CA, Quinn M. Barrow, Michael G. Colantuono, Richards, Watson & Gershon, Los Angeles, CA, for City of Seal Beach.

Dennis J. Kelly, Annette Barlow, Kelly, Cox, Wootton, Griffin, Gill & Sherburne, San Francisco, CA, Nicholas Chrisos, County of Orange, Santa Ana, CA, for Steve P. Rados, Inc.

Robert H. Burnham, Robin Flory, City of Newport Beach, Newport Beach, CA, for City of Newport Beach.

Thomas M. Crehan, Fishermen's Cooperative Association, Palos Verdes Peninsula, CA, for G. Mazzareno, Inc., et al.

Philip A. Berns, Warren A. Schneider, Robert R. Klotz, U.S. Department of Justice, San Francisco, CA, for United States of America.

Michael R. Leslie, Mary Newcombe, Hedges & Caldwell, Los Angeles, CA, for People of the State of California ex rel. Department of Fish and Game, Department of Parks and Recreation, California Regional Water Quality Control Board, Santa Ana Region, State Coastal Conservancy, and State Lands Commission.

A. Stephen Hut, Jr., Charles A. Mendels, Eric Mogilnicki, Wilmer, Cutler & Pickering, Washington, DC, Francis J. MacLaughlin, White & Case, Los Angeles, CA, for The Trans–Alaska Pipeline Liability Fund.

Robert E. Coppola, William P. Barry, Penny M. Costa, Baker & Hostetler, Long Beach, CA, William P. Barry, Robert E. Coppola, Penny M. Costa, Baker & Hostetler, Los Angeles, CA, for BP Oil Shipping Company, USA; BP Oil Supply Company; and BP America, Inc.

Erich P. Wise, Nicholas S. Politis, Flynn, Delich & Wise, Long Beach, CA, for Golden West Refining Company.

Carlton E. Russell, Joseph N. Mirkovich, Russell & Mirkovich, Long Beach, CA, for Brandenburger Marine, Inc.

Daniel E. Lungren, Charles W. Getz, IV, Jan S. Stevens, Sylvia Cano Hale, Office of the Attorney General, Los Angeles, CA, Linus Masouredis, Sara Russell, Office of the Attorney General, State of California, Oakland, CA, for State of California.

David E. R. Woolley, Blake W. Larkin, Todd A. Valdes, Williams, Woolley, Cogswell, Nakazawa & Russell, Long Beach, CA, for Attransco, Inc.

## ORDER AS TO (1) MOTION OF BP ENTITIES FOR A GOOD FAITH SETTLEMENT DETERMINATION AND FOR AN ORDER BARRING CLAIMS FOR CONTRIBUTION AND IMPLIED INDEMNITY UNDER STATE AND MARITIME LAW; (2) MOTION OF CLASS PLAINTIFFS' FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT WITH DEFENDANTS BP ENTITIES; AND (3) APPLICATION OF CLASS PLAINTIFFS FOR REIMBURSEMENT OF COSTS AND EXPENSES

KELLEHER, District Judge.

### I. INTRODUCTION

On October 21, 1996, this court heard oral argument by all parties as to a motion for good faith settlement determination and for an order barring claims for contribution brought by BP America, Inc., BP Oil Shipping Co., U.S.A., and BP Oil Supply Co. (collectively the "BP entities"). The hearing

had been scheduled for September 30, 1996, but was continued at the request of all parties. This motion was for a good faith determination was filed after the BP entities and the Class Plaintiffs had signed a Settlement Agreement on various dates in November, 1995 (the "Settlement Agreement"). Also scheduled for the hearing, and still under submission, is the Class Plaintiffs' related motion for final approval of the settlement agreement with the BP entities and the Class Plaintiffs' application for reimbursement of costs and expenses. This motion (the "BP motion") was supported by the Class Plaintiffs and opposed by co-defendants American Trading and Transportation Company ("AT-TRANSCO") and Golden West Refining Company ("Golden West" and, collectively, the "non-settling defendants").

After questioning by the court as to the applicability of state settlement law, the BP entities and the Class Plaintiffs (collectively, the "settling parties") requested a continuance of the hearing, to enable the settling parties to prepare a revised "slimmed down" proposed order. The settling parties asserted that such a revised order would still approve the settlement but could do so in a manner that would circumvent the problems discussed at length below. The settling parties failed to file a revised order prior to the November 18, 1996 hearing. At that hearing the parties orally reiterated various arguments and were again given leave to file further briefing on the asserted necessity of this court applying California settlement law. That briefing was due on December 9, 1996. On December 9, 1996, at the request of the parties, a two week extension was granted. On December 20, 1996, a further extension was granted continuing the due date for further briefing until January 13, 1997.

On January 10, rather than complying with the orders of this court to provide further briefing and after having received numerous continuances, the BP entities notified the court through a "status report" that efforts to resolve the issues between the parties had not yet been completed. To provide the parties with some guidance, and in an effort to avoid further delays, the court, on January 13, 1997, directed all interested parties to answer five specific questions: (1) whether generally this court must apply state settlement principles when state law causes of action are present; (2) whether the state settlement procedures amount to substantive, rather than merely procedural, law—and whether this creates a necessity to apply the state settlement procedures in federal court; (3) why the state settlement procedures should be applied when they appear to directly conflict with federal settlement rules; (4) how state settlement procedures can be applied when federal law causes of action are asserted and will remain against non-settling parties; and (5) how the two settlement principles—if one applies to state law claims and the other applies to federal law claims—can be reconciled in one matter where the settlement amount is not divided and clearly applied as to state law claims and federal law claims, respectively.

Having now before it all responses to the court's questions, as well as the original filings for the October 21, 1996, hearing, this court rules as follows.

## II. BACKGROUND AND THE SETTLEMENT AGREEMENT

On February 7, 1990, the hull of the steamship American Trader was punctured while she was approximately one-and-one-half miles off the coast of Huntington Beach, California. As a result, the vessel is alleged to have released more than 200,000 gallons of crude oil into the Pacific Ocean. Oil from the spill spread over a substantial area, and oil washed ashore in Huntington Beach, Newport Beach, and adjacent nearby coastal areas. On February 13, 1990, this action (the "Class Action") was filed in the United States District Court for the Central District of California. As against various permutations of the relevant parties, the Fourth Amended and Supplemental Class Action Complaint, filed May 12, 1992, alleges violations of §§ 293 and 294 of the California Harbors and Navigation Code, the Trans–Alaska Pipeline Authorization Act (the "TAPAA"), and general maritime law. Notably, both before and after the Settlement Agreement (if it were to be given effect by this court's order) at least

some of the non-settling defendants face and will face liability under both federal and state causes of action.

The Settlement Agreement is, by its own terms, expressly contingent upon this court's finding of "good faith" under §§ 877 and 877.6 of the California Code of Civil Procedure.[1] Settlement Agreement, ¶¶ 9.1, 11.5, Declaration of William P. Barry, September 9, 1996, Ex. 4, at 22–23, 26 (stating that the Agreement is contingent on a finding of good faith and the granting of a contribution bar—two court actions not required upon the settlement of federal maritime causes of action). The portion of the settlement to be paid by the BP entities is $1,087,500. Settlement Agreement, *supra*, ¶ 2.1, at 11. Under a related settlement approved by this court *only under federal law*, the Fund is also making a payment in this amount. The BP entities describe their share as about fifteen percent of the total recoverable amount if the Class Plaintiffs recover on all claims, or one hundred percent of the total amount if there is no recovery by Class Plaintiffs whatsoever.

As part of the Settlement Agreement, the Class Plaintiffs have assigned certain rights to the BP entities. Under the terms of the Settlement Agreement as presented to this court, the BP entities and the Fund each has "an interest in any and all claims" that Plaintiffs have against the non-settling defendants "up to, but not exceeding, the gross total amount of the payment made by the respective Settling Defendant [sic] pursuant to this stipulation...." Settlement Agreement, *supra*, ¶ 7.2, at 20. That is to say, should the

Class Plaintiffs receive a recovery against the remaining defendants in the amount of $1,087,500 or more, then the BP entities are completely reimbursed; and, in fact, would pay nothing to the Class Plaintiffs.

■■■■ The settling parties ask the court to find good faith and to make an order barring contribution under state law, at least as to the state law claims. The non-settling defendants assert that general maritime law, rather than California law, applies to how the courts should treat the settlement in its entirety. *Under California law*, after a finding of good faith, the non-settling defendants are entitled to a credit equal to the settlement amount to be applied against any judgment reached against them. Cal.Civ Proc.Code § 877(a); *see also Tech–Bilt, Inc. v. Woodward–Clyde & Associates*, 38 Cal.3d 488, 493, 213 Cal.Rptr. 256, 258, 698 P.2d 159, 161 (1985). Also under California law, a settling defendant is discharged from liability for any contribution to any other parties. Cal.Civ. Proc.Code § 877(b). In contrast, *under federal maritime law*, the settlement amount is irrelevant. Without need for the court to adjudged good faith, an eventual final judgment of liability against the non-settling defendants is decreased by the percentage of fault attributed to the settling defendant. *McDermott, Inc. v. AmClyde and River Don Castings Ltd.*, 511 U.S. 202, 217–21, 114 S.Ct. 1461, 1470–72, 128 L.Ed.2d 148 (1994).[2] Further, each party has conceded to the court that, under *McDermott*, claims by the non-settling parties against the settling parties for contribution are barred without a need for a fairness finding by the court.

---

**1.** Section 877 provides that should a release, dismissal, or covenant not to sue be given in "good faith" then "it shall reduce the claims against the [non-settling defendants] in the amount stipulated by the release ..." and "it shall discharge the party to whom it is given from all liability for any contribution to any other parties." Cal.Civ.Proc.Code § 877(a)–(b) (West Supp.1997).

Section 877.6, for its part, provides procedural direction as to how the California courts should implement the good faith hearing. Cal.Civ.Proc. Code § 877.6(a)–(d). The section notes, among other things, that any party (settling or non-

settling) can call for the hearing, that the court may consider affidavits and other evidence at its discretion, and that the party asserting lack of good faith carries the burden of proof. *Id.*

**2.** In its opinion, the Supreme Court discusses at length the rationale for adopting this approach, addressing three paramount considerations in doing so: "[C]onsistency with the proportionate fault approach of *[United States v.] Reliable Transfer [Co., Inc.]*, 421 U.S. 397, [95 S.Ct. 1708, 44 L.Ed.2d 251] (1975), promotion of settlement, and judicial economy." *McDermott*, 511 U.S. at 211, 114 S.Ct. at 1466–67.

The two questions before the court, then, are (1) does federal or state law apply to the assessment of the Settlement Agreement, and (2) if state law applies, have the non-settling defendants carried their burden of establishing that the Settlement Agreement was *not* entered into in good faith? Because the court determines that federal law alone should be applied to this Settlement Agreement, the second question will not be addressed.[3] The BP entities' motion for a finding of good faith, because it asks this court to apply the incorrect law, is denied for the following reasons.

## III. DISCUSSION

The BP entities seek a determination that the BP entities' settlement with Plaintiffs is in good faith pursuant §§ 877 and 877.6 of the California Code of Civil Procedure. The BP entities further seek an order barring pending and future claims for contribution and implied indemnity under state and maritime law. The settling parties concede that federal settlement law applies to the settlement of the *federal claims.* Thus, upon settlement, no finding of good faith is necessary as to those claims and a contribution bar is automatically put in place. To convince this court that—in the place of the federal law which would require this court to do nothing—California settlement law applies to the *state law claims,* the BP entities and the Class Plaintiffs must address two points: (A) whether California settlement procedure amounts to state substantive law that usually must be applied when adjudging state law causes of action and (B) whether the state law, even if substantive, nevertheless should be preempted by the federal approach— where there is a direct conflict with the accepted federal approach and a federal interest remains after settlement.

### A. State Settlement Procedure as Substantive Law

■ If the state settlement law embodied in §§ 877 and 877.6 is found to be substan-

tive, rather than merely procedural, this court is obligated, in the absence of the considerations discussed below, to apply it to the settlement of state law claims. It is well established that in adjudicating state law claims brought before a federal court under supplemental jurisdiction, the court is bound to apply state substantive law. *O'Melveny & Myers v. Federal Deposit Ins. Corp.,* 512 U.S. 79, 85–89, 114 S.Ct. 2048, 2054–55, 129 L.Ed.2d 67 (1994) (holding that, in the absence of a conflict with a federal interest, state law claim by the FDIC for wrongdoing harming an insured thrift was governed by state law and not federal common law); *see also Yount v. Acuff Rose–Opryland,* 103 F.3d 830, 835 n. 6 (9th Cir.1996) ("California law applies because a federal court exercising jurisdiction over non-federal claims must *usually* apply the substantive law of the state in which it sits." (emphasis added)) (citing *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78–80, 58 S.Ct. 817, 822–23, 82 L.Ed. 1188 (1938)); *American Triticale, Inc. v. Nytco Servs., Inc.,* 664 F.2d 1136, 1141 (9th Cir. 1981) ("It is well settled that a federal court exercising diversity jurisdiction must apply substantive state law."); *Van Gemert v. Boeing Co.,* 553 F.2d 812, 813 (2d Cir.1977) ("It is the source of the right, not the basis of federal jurisdiction, which determines the controlling law.").

■ Given that state *substantive* law generally should be applied when dealing with state causes of action, this court must next determine whether §§ 877 and 877.6—as sections of the California Code of Civil Procedure—amount to substantive law. In situations similar to that now before the court, the Ninth Circuit has held that procedural rules can amount to substantive law where the rule impacts a state right. *See, e.g., Mangold v. California Public Utilities Commission,* 67 F.3d 1470, 1479 (9th Cir.1995) ("The method

---

**3.** The court need not evaluate the fundamental fairness of the Settlement Agreement as set out in the guiding case of *Tech–Bilt.* Therein, the California Supreme Court set out a number of factors that courts must take into account, such as: a rough approximation of plaintiffs' potential recovery, the settlor's proportionate liability, the allocation of settlement proceeds among plain-

tiffs, a recognition that a settlor should pay less in settlement than after trial, and the lack of wrongful conduct aimed to injure the interests of non-settling defendants. *Tech–Bilt,* 38 Cal.3d at 499, 213 Cal.Rptr. at 263, 698 P.2d 159. Because this court determines that federal law must be applied to the entirety of the settlement, these factors need not be addressed.

of calculating a fee is an inherent part of the substantive right to the fee itself, and a state right to an attorneys' fee reflects a substantial policy of the state."). In this case, the effect of a settlement of the state law claims between the Class and the BP entities has a similar impact on the ability of the Class to collect on potential liability adjudged against the non-settling defendants.

The Ninth Circuit has held that although § 877.6 is procedural, § 877 amounts to substantive law. In *Federal Savings and Loan Ins. Corp. v. Butler*, the court held that "[i]t is the substantive provisions of California law that are applicable (in this case section 877)." 904 F.2d 505, 511 (9th Cir.1990). The *Butler* court determined that the manner in which a settlement sets off liability and bars contribution actions affects the relevant underlying state right. This point was further made in *Yanez v. United States*, 989 F.2d 323, 327–28 (9th Cir.1993), where the Ninth Circuit directed a trial court to determine whether a prior settlement of a state court claim had been made in good faith within the meaning of §§ 877 and 877.6. The court was directed to consider the factors enunciated in *Tech–Bilt*. *Id.* at 328.

In the absence of the considerations discussed below, this court is further bound to apply the settlement procedures to the state causes of action because they are outcome determinative. *See Byrd v. Blue Ridge Rural Electric Cooperative, Inc.*, 356 U.S. 525, 536–37, 78 S.Ct. 893, 900–01, 2 L.Ed.2d 953 (1958) (holding that state procedural law must be applied where it is "bound up with the definition of the rights and obligations of the parties" but explaining that the balancing test is "whether the federal policy . . . should yield to the state rule in the interest of furthering the objective that the litigation should not come out one way in the federal court and another way in the state court"). Where the application of §§ 877 and 877.6 has not conflicted with a federal settlement procedure, there are numerous examples, primarily in the securities field, of the federal courts applying the state settlement procedures. *See, e.g., Kirkorian v. Borelli*, 695 F.Supp. 446, 452 (N.D.Cal.1988) ("Federal Courts in California have utilized the mechanism of sections 877 and 877.6 to determine whether a partial settlement is in good faith in cases, such as this one, involving pendent California state law claims."); *Nelson v. Bennett*, 662 F.Supp. 1324, 1336 (E.D.Cal.1987) (finding "a settlement bar rule defines and limits the defendants' substantive rights of contribution"); *see also Commercial Union Ins. Co. v. Ford Motor Co.*, 640 F.2d 210, 211–13, 214 n. 3 (9th Cir.1981) (applying § 877 to claims arising under California law in a diversity case), *cert. denied*, 454 U.S. 858, 102 S.Ct. 310, 70 L.Ed.2d 154 (1981). This court finds that the case law is clear that state settlement provisions amount to substantive, rather than purely procedural, law.

■ However, even when a state substantive law is generally to be applied in a federal court, it nevertheless cannot be applied in those limited situations where "there is a 'significant conflict between some federal policy or interest and the use of state law.' " *O'Melveny & Myers*, 512 U.S. at 87, 114 S.Ct. at 2055 (quoting *Wallis v. Pan Am. Petroleum Corp.*, 384 U.S. 63, 68, 86 S.Ct. 1301, 1304, 16 L.Ed.2d 369 (1966)). This court now turns to the question of whether the application of state settlement procedures to the Class Plaintiffs' state law causes of action—which would otherwise be so applied by this court—creates a conflict with the federal interest in the uniform application of federal maritime law, as expressed in *McDermott*, 511 U.S. at 217–21, 114 S.Ct. at 1470–72.

*B. The State–Federal Conflict*

■ This court is faced with the novel question of whether two clearly conflicting substantive settlement procedures (one under state law, the other under federal law) can be applied to their respective causes of actions in one law suit. The BP entities and the Class Plaintiffs assert that, based on the reasoning discussed above, §§ 877 and 877.6 are parts of the substantive law of the state and must be applied. Yet this is only the first half of the review this court must perform.

Neither the settling nor the non-settling parties dispute either that state settlement law should generally be applied to state causes of action or that the federal settlement law must be applied to the specific

federal causes of action before the court. The question, then, is whether the state law can be applied to the state law causes of action without creating a "significant conflict with an identifiable federal policy or interest." *O'Melveny & Myers,* 512 U.S. at 88, 114 S.Ct. at 2055. Should such a conflict exist—that is, should a federal interest be severely impacted—then the federal rule must supplant the state rule. *Id.* The question that this court must address, for the first time in this Circuit, is whether, when such a conflict exists in the application of substantive settlement procedures, the federal settlement law should be applied to the state law causes of action in order to protect the federal interest in the uniform application of maritime law.

The settling parties offer three central tenets to their argument that state settlement law should not be preempted: (1) that this court has previously held that the state law causes of action can supplement the federal law and it would now be unjust for the court to "contradict its prior ruling" by finding that state settlement law cannot be applied, (2) that numerous courts have applied both state and federal settlement law in the same action, and (3) that the application of the two rules does not create a conflict. After considering these and other arguments raised by the parties, this court determines that, on these facts, the application of state settlement law to the state causes of action would act against the federal interest in the uniform application of federal maritime law.

*1. The Relevance of* Slaven I

■ The settling parties first note that this court has already held *as to this case* that certain state causes of action (under Cal.Harb.Nav'n Code §§ 293, 294) are not preempted by federal law. *Slaven v. BP America,* 786 F.Supp. 853 (C.D.Cal.1992) (hereinafter *Slaven I* ). They then argue that because state law as to liability has been allowed in, so, too, should state law as to settlements. This argument, however, is overly simplistic and without merit.

As the non-settling parties point out, the starting point is that federal maritime law has been held, generally, to apply in this case. *Id.* at 856. As this court has previously written on the subject, "[a]ll the parties

agree that these consolidated cases fall under this Court's maritime jurisdiction and that therefore general maritime law applies." *Id.* In this court's reported opinion, cited above, one of several issues involved whether claims brought under §§ 293 and 294 of California's Harbors and Navigation Code could survive a motion for summary judgment. The defendants, including the BP entities, contended that the state law claims were preempted by the TAPAA. The defendants lost. This court held that the additional state law claims, "are not preempted because any federal interest in uniformity in this area is outweighed by the compelling state interest, there is no actual conflict with federal admiralty law since that law includes TAPAA, and the goal of uniformity is served by allowing for [the state law remedies]." *Id.* at 864–65. Essentially, the state law claims were allowed in because "a state may modify or supplement maritime law ... provided that the state action does not contravene any acts of Congress, nor work any prejudice to the characteristic features of the maritime law, nor interfere with its proper harmony and uniformity in its international and interstate relations." *Id.* at 862 (internal quotations omitted) (quoting *Askew v. American Waterways Operators,* 411 U.S. 325, 337, 93 S.Ct. 1590, 1598–99, 36 L.Ed.2d 280, *rhg. den.,* 412 U.S. 933, 93 S.Ct. 2746, 37 L.Ed.2d 162 (1973); *Just v. Chambers,* 312 U.S. 383, 389, 61 S.Ct. 687, 692, 85 L.Ed. 903 (1941))

In *Slaven I* these considerations resulted in the finding that "any federal interest in uniformity is outweighed by the compelling state interest [in regulating pollution within a state's borders.]" 786 F.Supp. at 864. These same considerations, however, may warrant a different result as to the law applicable to settlements addressed herein. Previously, this court allowed state law claims to continue because they "supplemented" federal law; that is, there was no direct conflict. *Id.* at 863 ("State laws providing for recovery for shoreside damage from oil spills are permissible, unless they conflict with a specific federal law."). Where no such conflict existed in *Slaven I,*[4] in the present dispute there

---

4. As the non-settling parties point out, the TAPAA repealed *Robins Dry Dock & Repair Co. v. Flint,*

275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927), which had stood for the proposition that there

is the potential direct conflict between a state and a federal settlement rule.

■■■ As has been discussed, under California law, once the court gives its "good faith" stamp to the parties, the non-settling defendants potential liability will be decreased by the amount paid by the settling party (also called the "*pro tanto*" approach). Cal.Civ.Proc.Code §§ 877 and 877.6. The federal maritime law is different. Clearly articulated in the case law, the decrease in liability (or credit) for non-settling parties is set at the percentage of fault attributable to the settling parties (called the "proportionate share approach"). *McDermott,* 511 U.S. at 217–21, 114 S.Ct. at 1470–72. This court, as the settling parties ask, cannot simply apply substantive state settlement law based on its holding in *Slaven I,* without first determining whether any differences between that body of law and the federal body of law can be reconciled.[5]

### 2. Previous Simultaneous Application of Both State and Federal Settlement Law

In an effort to downplay the inherent conflict between the two bodies of law, the settling parties cite to the decisions of, in their words, "numerous courts" that have approved the application of state settlement "principles" to state claims and the application of federal settlement principles to federal claims. *See, e.g., Smith v. Mulvaney,* 827

---

can be no recovery for economic losses in the absence of compensable physical injury to the person or property. *See Slaven I,* 786 F.Supp. at 857–65. As discussed thoroughly by this court in *Slaven I,* recovery beyond *Robins* is now acceptable—in light of the enactment of the TAPAA. Accordingly, in *Slaven,* allowing the Class Plaintiffs to seek recovery under Cal.Harb. & Nav. Code §§ 293 and 294 did not conflict with federal law. However, there is nothing in TAPAA that replaces maritime comparative fault and settlement principles. Thus the *McDermott* rule—the proportionate share approach—stands.

5. The settling parties repeatedly emphasize in both their original moving papers and the responses to this court's request for further briefing that the settling parties acted in reliance on this court's opinion in *Slaven,* which held that state law can be entertained in maritime cases. The BP entities state, "it would be patently unfair to change the operative rules now, thereby derailing a settlement which was achieved only after many years of litigation and in reliance upon the rule of decision enunciated in *Slaven* more than four years ago." Reply of the BP entities in Support of Their Motion for a Good Faith Settlement, at 6.

However, the parties actual reliance on *Slaven I* for the proposition that state law as to settlements would certainly apply to the present case is highly doubtful, and, at best, quite misguided. First, as discussed above, in *Slaven I,* supplemental state law as to maritime liability was allowed to co-exist with federal rules because the state law supplemented, rather than conflicted with, federal maritime law. In stark contrast, this court now must address a settlement that calls for it to make findings under a state settlement scheme that is in direct conflict with the accepted federal approach. The settling parties cannot in good faith contend that this court should act in contravention of a clearly applicable federal maritime law, simply because the court has pre-

viously held that the underlying state law causes of action were not preempted. The settling parties' argument is without logical basis. This court has not previously held that the California settlement laws have been carried into this matter by the mere presence of the state law causes of action. Accordingly, there is no holding as to this issue on which the settling parties could possibly have appropriately relied.

Furthermore, just within the last year, the BP entities stated—in briefs before a state court addressing a similar settlement agreement—that whether or not state or federal law applies to settlements is yet to be determined by the courts. In the BP entities' Memorandum of Points and Authorities before the state court, the BP entities wrote, "[t]his motion does not call for the Court to pick one body of law or the other, but to apply both for finality purposes, . . . ." Barry Declaration, September 9, 1996, Ex. 1, at 22. The BP entities go on to note that *Slaven I* was "not a final determination" and that "the potential exists for contribution and implied indemnity claims to arise under both [state and federal law]." *Id.* at 21. Such language indicates that the question the court now answers as to the applicability of state settlement law was unanswered in the settling parties' minds *even after the settlement was reached.* The BP entities cannot now seriously argue that—since this court's decision in *Slaven I*—they have *always* believed that state law would apply. Though the settling parties may have hoped that this court would eventually adopt the state procedures, such a hope creates a fair amount of risk. This is especially true when the hope is combined with both contingent language in a settlement agreement and the absence of Ninth Circuit precedent in this area. In so structuring their settlement, this risk was carried by the settling parties and any argument that the parties somehow relied on this court's previous rulings on distinct questions of law are wholly inconsequential.

F.2d 558, 559 (9th Cir.1987); *Nelson,* 662 F.Supp. at 1327; *In re Nucorp Energy Secs. Litig.,* 661 F.Supp. 1403, 1414 (S.D.Cal.1987). Each of these decisions dealt with securities law and thus addressed considerations not identical to those before this court. These decisions also were made prior to *Franklin v. Kaypro,* 884 F.2d 1222 (9th Cir.1989), *cert. denied,* 498 U.S. 890, 111 S.Ct. 232, 112 L.Ed.2d 192 (1990), in which the Ninth Circuit held that the proportionate share, rather than the *pro tanto,* approach would be the law as to the settlement of federal securities cases. Yet although they do not necessarily apply the federal settlement procedures decided upon in *Franklin,* the manner in which the *Smith, Nelson,* and *Nucorp* courts have either failed to address or attempted to reconcile two differing settlement approaches (federal and state) is nevertheless instructive.

In *Smith,* the Ninth Circuit found that upon the settlement of federal securities actions, there is no automatic bar to contribution actions; rather their must be a fairness hearing—similar in nature to the fairness hearing that is required under California law. *Smith,* 827 F.2d at 562–63. Notably, in *Smith,* the appeal was made only from the district court's ruling on the federal cause of action; the Ninth Circuit, accordingly, was not forced to address the conflict between the state (*pro tanto* ) and federal (proportionate share) set-off procedures and how this might affect the uniform application of federal securities settlement law. The settling parties' efforts to cite this case as an example of the harmonious application of state and federal approaches are thus without basis.

The settling parties' contention that this court should apply state law to the state claims and federal law to the federal claims is severely undercut by the simple reality that, at least as to those portions reviewed by the courts in *Nucorp* and *Nelson,* the federal approach to the settlement of securities actions was quite similar to the general state approach embodied in S § 877 and 877.6. In *Nucorp,* the court did, without much discussion, apply federal law to the federal claim and state law to the state claim. *Nucorp,* 661 F.Supp. at 1406–12. The court noted, however, that "[t]he factors relevant to a finding of good faith under California law, then, are similar to the factors which are relevant to a finding that the settlement represents the settlor's 'fair' and 'proper' share of the damages under [federal law]." *Id.* at 1411. Further, though later abrogated by *Franklin,* the court in *Nucorp* had determined that under federal securities law, "any claims against a non-settling defendant [are to] be reduced by the amount of the settlement." *Id.* at 1408 (essentially applying the equivalent of the California *pro tanto* credit). Accordingly, in terms of the test applied—as to both the contribution bar and the *pro tanto* credit—the general state settlement law and the federal settlement law as it applies to securities litigation were similar enough in *Nucorp* that the application of both standards to a federal case involving both federal and state causes of action created no measurable conflict.

In *Nelson,* the court directly addressed the potential adverse effects of applying two settlement procedures in one action which included both state and federal claims. The court determined that settlement bar rules are substantive and that there was a need for the uniform application of federal settlement law, at least as to the federal causes of action in that case. *Nelson,* 662 F.Supp. at 1336–37. Oddly, the court spent considerable time reviewing the problems that might arise when applying two different standards for assessing the good faith of a settlement (which it deemed to be required for both the approval of both the state and federal causes of action), but the court did not address the overall conflict created by the *pro tanto* approach being applied to the state law causes of action and the proportionate share approach being applied to the federal causes of action. The court, though finding that the good faith standards were similar enough to avoid any problems and not addressing other conflicts, did, however, predict that the federal courts might soon find themselves in the situation now faced by this court. The *Nelson* court wrote:

> [P]ractical difficulties in application will arise not in the majority of cases, but only in those particular narrow instances where (1) both state and federal claims are asserted in a single action, (2) the state

provides a settlement bar statute, and (3) the state statute and the federal rule vary significantly.

*Id.* at 1337. This court now faces a situation where (1) both state and federal claims are asserted in a single action, (2) the state has provided a settlement bar statute, and (3) the state statute and the federal rule vary significantly. In addition, the Supreme Court has determined that there is a federal maritime settlement policy that must be followed. *McDermott,* 511 U.S. at 217–21, 114 S.Ct. at 1470–72.

Though the cases cited by the settling parties display both a willingness in the courts of the Ninth Circuit to apply non-conflicting settlement procedures and an unwillingness to address conflicting procedures, they otherwise provide little instruction to this court. The court in *Kaypro* resolved that the proportionate share approach was to be applied to the settlement of federal securities actions, much in the way that *McDermott* did so for maritime actions, but the Ninth Circuit still has provided no guidance as to how to reconcile the conflicting federal and state settlement laws—as to either securities cases or maritime cases. This court now turns to this question.

### 3. The Conflict

In direct contrast to the basis upon which this court made its determination that two state causes of action were not in conflict with federal maritime law because they supplemented federal law in *Slaven I,* here there is federal maritime common law, as expressed in *McDermott,* which clearly contradicts a state law. The state law (*pro tanto* credit) is in direct conflict with the federal law (proportionate share approach) in that they provide different settlement formulae. The settling parties assert that the Settlement Agreement evades conflict because one body of law can be applied to the state law claims and one body of law can be applied to the federal claims. Could the two settlement procedures be applied side by side, as were some of the non-contradictory procedures in the securities cases discussed above, then this court would be obligated to apply the state settlement procedures. *See, e.g.,*

*O'Melveny & Myers,* 512 U.S. at 87, 114 S.Ct. at 2055 (finding that the application of federal rules of decision to state causes of action is limited to situations where there is a "significant conflict between some federal policy or interest and the use of state law"). Yet again, Class Plaintiffs' simplistic view of the settlement and this court's requested approval thereof avoids the real questions faced by this court. The side-by-side application of these settlement procedures is unworkable for the following reasons.

The Supreme Court, in *O'Melveny & Myers,* emphasized that the relevant state law had to be followed in that case because "[t]here is not even at stake that most generic (and lightly invoked) of alleged federal interests, the interest in uniformity." 512 U.S. at 88, 114 S.Ct. at 2055. On the maritime front, the Ninth Circuit has written that "states may supplement federal admiralty law as applied to matters of local concern, so long as state law does not *actually conflict* with federal law or *interfere* with the *uniform working* of the maritime legal system." *Pacific Merchant Shipping Association v. Aubry,* 918 F.2d 1409, 1422 (9th Cir.1990), *cert. denied,* 504 U.S. 979, 112 S.Ct. 2956, 119 L.Ed.2d 578 (1992). Should the state law "unduly disrupt" admiralty law, it is preempted. *Id.* at 1424.

The Supreme Court has expressly held that federal law will control to the extent there is any conflict between state and federal maritime law. *Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 227, 106 S.Ct. 2485, 2497, 91 L.Ed.2d 174 (1986). The Supreme Court has further noted that the difficulties in directly applying a myriad of state rules would tend to destroy the uniformity of federal maritime law. *Id.* at 229, 106 S.Ct. at 2498. "To subject maritime co-defendants to varying rules of liability would violate a policy behind federal maritime law, that is, to create uniform rules which tend to facilitate maritime commerce." *Daughtry v. Diamond M Co.,* 693 F.Supp. 856, 863 (C.D.Cal.1988) (addressing the distinct question of whether to apply California settlement law to case involving federal maritime claims only, prior to the Supreme Court's determination in *McDermott* ).

■ As to this question of uniformity, this court finds that applying the federal, rather than an individual state's, rule as to settlements is required when federal maritime causes of action will remain against the non-settling defendants. Given that there is now a definite admiralty settlement law, as prescribed in *McDermott*, it will necessarily be in conflict with one or another of the many diverse state statutes-as represented by California's §§ 877 and 877.6. A recent California case, holding that the federal settlement laws are to be applied in cases involving federal maritime law, states the proposition well:

> The manner in which a nonsettling defendant's liability is reduced, whether by a proportionate share approach or by a pro-tanto credit, has a direct impact on the substantive right to recover.... Consistent application of rules pertaining to calculation of the remaining defendant's liability is required for uniformity and harmony in general maritime law.

*Hutchins v. Juneau Tanker Corp.*, 28 Cal. App.4th 493, 499–500, 33 Cal.Rptr.2d 542, 546–47 (1994).

In response to *Hutchins*, the settling parties argue simply that in *Hutchins* there were no state causes of action; though in state court, the claims involved only federal maritime law. Accordingly, the settling parties continue, it was appropriate to use the federal substantive law on settlements where the court was addressing federal claims. *Quid pro quo*, argue the settling parties, as to matters before a federal court where the "case in chief" against the BP entities is a state strict liability case under California Harbors and Navigation Code §§ 293 and 294 (not federal causes of action).

The settling parties contend that *Hutchins* applied federal substantive law because *Hutchins* involved only a federal cause of action; and that because state issues have been thrown into the mix in the present matter, the federal approach should be abandoned. The settling parties misconstrue *Hutchins*. *Hutchins* states that "[c]onsistent application of rules pertaining to calculation

of the remaining defendant's liability is required for uniformity and harmony in general maritime law." *Id.* at 547. Thus a state court should decide, as did the court in *Hutchins*, to apply federal settlement rules when dealing with federal causes of action. This determination in no way brings about the settling parties' desired result that the mere presence of a state law claim in a general maritime matter heard before a federal court should necessitate the application of the state rule as to settlements.

The Supreme Court, having examined various approaches, held that the proportionate share approach should be applied in maritime cases. *McDermott*, 511 U.S. at 217–21, 114 S.Ct. at 1470–72. Applying the settlement law of differing states, even only as to supplemental state law causes of action, would result in the application of varied settlement approaches throughout the country to non-settling defendants who continue to face liability under federal maritime law. The interest in uniformity militates against this result.

It should also be noted that this court's determination herein does not affect or address the previously ruled-upon question of whether state law causes of action can co-exist with federal maritime causes of action. This court does not contradict its decision in *Slaven I* that the state law causes of action in and of themselves are supplemental and not contradictory. Rather, the court finds that the California Harbors and Navigation Code causes of action cannot be allowed to bring in a separate and distinct substantive body of law (here the California settlement provisions), where that second body of law conflicts with the accepted and mandated federal approach. *See, e.g., MFS Mun. Income Trust v. American Medical Intern.*, 751 F.Supp. 279, 286 (D.Mass.1990) (finding that federal settlement law should be applied even where "[f]ederal securities law has not preempted the state causes of action").

Where federal causes of actions under maritime law remain against non-settling defendants, the federal interest in uniformity requires that one body of settlement law be applied.[6] Given the explicit recognition to

6. This court makes no determination on the separate question of whether the federal settlement

the importance of uniformity in the maritime case law, this court finds that where federal maritime causes of action remain against the non-settling defendants, the court cannot condone the application or approval of the California state settlement law even as to the state law causes of action.

The settling parties attempt to de-emphasize the conflict between the state and federal settlement laws by explaining that when and if liability is eventually found as to the non-settling parties, the Class Plaintiffs will likely elect to collect on either the federal or state causes of action—whichever gives them the highest likelihood for recovery—but not both. Aside from the theoretical problems created where both state and federal causes of action may not remain or prove successful against all defendants, this choice of remedies—otherwise within the rights of plaintiffs—creates a mechanism by which any plaintiff could circumvent the proportionate share rule that mandated by *McDermott.*

As a First Circuit district court explained when addressing the settlement of state and federal securities actions, "[i]f the plaintiff were allowed to recover under a state law claim whenever that award exceeded the federal award, then the state law would disrupt the federal policies behind ... the pure comparative fault set-off rule." *MFS,* 751 F.Supp. at 286 (noting that, as to how to resolve the conflicts inherent in state and federal settlement law, "the lack of guidance is particularly striking in the Ninth Circuit").

 Finding that the Ninth Circuit is yet to rule on this exact question, this court adopts to holding of the *MFS* court that "it would be impossible to comply with both laws, and if the plaintiff were able to collect on a greater state award, the federal policy would be frustrated." *Id.* at 287. Accordingly, this court holds that the federal maritime rule of contribution bars and a proportionate share set-off, as enunciated in *McDermott,* preempts the application of the

California *pro tanto* approach in the limited case where both state and federal causes of action are present and where federal causes of action will remain against the non-settling defendants. Should the plaintiffs eventually recover on both federal and state causes of action, the plaintiffs cannot be permitted to elect the state law settlement provisions so as to circumvent a less favorable recovery under the federal approach.

The non-settling defendants conclude their arguments by noting that practical problems in applying two different settlement approaches necessitates that one be chosen. The settlement is made in one amount that is not, and perhaps cannot rationally be, divided between the state and federal law causes of action (making the California set-off calculation impossible). Though it did not need to address this problem, a Second Circuit district court has provided the following insight:

> Where a federal securities law and a state law claim are based on the same tortious conduct, as discussed above, it is not clear how disparate [settlement rules] would be applied to a jury verdict awarding identical damages on both claims, unless the .[state settlement law] is to be completely overridden. A different but related problem is created regarding the appropriate setoffs to be granted on the state law claim to the non-settling defendants.

*First Fed. Sav. & Loan v. Oppenheim, Appel, Dixon & Co.,* 631 F.Supp. 1029, 1036 (S.D.N.Y.1986). A Third Circuit court also addressed this question by noting that:

> Should the settling parties revise their agreement, it must state the amount of the settlement attributable to the state law claims. Since only the state law claims will be subject to the *pro tanto* rule, calculation of the non-settling parties' liability respecting these claims is impossible without such a separate figure. A fairness hearing also would be necessary to deter-

approach would need to be followed in a situation where the non-settling defendants faced liability only under remaining state law causes of action. This might occur, for example, if a settlement resulted in a dismissal of federal claims against all non-settling defendants and only state law causes of action remained or if only state law

causes of action were brought as against all defendants to begin with. In those situations, any potential conflict between state and federal contribution bars and set-off calculations would be necessarily averted and any federal interest in the uniform effect of settlements on state law causes of action would likely be negligible.

mine if this figure was a 'fair' or 'proper' approximation of the settling parties' liability for the state claims.

*In re Sunrise Securities Litigation,* 698 F.Supp. 1256, 1264, n. 22 (E.D.Pa.1988). Though this court—having based its determinations on the need for uniformity rather than the potential practical problems of attempting to apply the two contradictory approaches—need not attempt to answer the question of whether one settlement amount could, in theory, be divided into two portions, the conclusions this court reaches on this question further support a finding that the federal approach alone must be applied.

The *In re Sunrise* court assumed that state and federal approaches could co-exist. It did not, however, have to deal with the direct problem faced by this court. Instead, the settlement therein was deemed invalid because it specifically called for the application of the state approach to the settlement of the federal causes of action. The court, however, did note that "[t]he combination of state and federal claims in the same action makes [a] lack of uniformity unavoidable." *Id.* at 1264 n. 21. The court goes on to state that this conflict might be solved by creating separate figures for the settlement of each of the state and federal claims. *Id.* at 1264 n. 22.

The division of a settlement between state and federal causes of action, however, is not workable in the maritime context—where a uniform policy for the settlement of federal claims has been adopted by the Supreme Court, the same underlying tortious conduct is the basis for the federal and state claims, and the application of the state procedure would create an avenue by which the plaintiff could circumvent the chosen federal settlement policy as to the rights of non-settling federal action defendants. The practical difficulties in applying both the state settlement law and the federal maritime rule thus also support the finding of this court that where federal causes of action remain against non-settling defendants, so, too, a federal interest remains in the uniform and straight-forward application of the proportionate share calculus.

## IV. CONCLUSION

For the foregoing reasons, the BP entities' motion for a good faith settlement determination and for an order barring claims for contribution is denied. Because, by its own terms, the Agreement is dependent on a finding of good faith by this court under §§ 877 and 877.6 of the California Code of Civil Procedure, the court notes that the Settlement Agreement is no longer valid. Accordingly, both the Class Plaintiffs' motion for final approval of the settlement agreement with the BP entities and the Class Plaintiffs' application for reimbursement of costs and expenses are also denied.

IT IS SO ORDERED.